SECURITY STOVE & MANUFACTURING COMPANY, RESPONDENT, v. WM. A. STEVENS ET AL., APPELLANTS.*

Kansas City Court of Appeals. June 11, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2549, p. 658, n. 40; section 2853, p. 878, n. 82; Fixtures, 26CJ, section 3, p. 655, n. 34, 35; section 4, p. 656, n. 44; section 58, p. 688, n. 35; section 115, p. 728, n. 94; Mechanics' Liens, 40CJ, section 11, p. 51, n. 60; section 45, p. 71, n. 24; section 47, p. 72, n. 41; section 703, p. 482, n. 77.

Joseph F. Keirnan for respondent.

Josephine Myers for appellant.

BLAND, J.—This is a suit by a sub-contractor to enforce a mechanic's lien on certain real estate owned by the defendant, situated in Kansas City, Missouri. The case was tried before the court without the aid of a jury. The court rendered judgment against the contractor, Egender, in the sum of $402.45 and adjudged that plaintiff have a mechanic's lien against defendant's property in that sum. Defendant has appealed.

This controversy is over the lienability of sixteen gas ranges or stoves sold by plaintiff to Egender for the purpose of being installed in defendant's property. The facts show that on March 15, 1924, defendant purchased two adjoining buildings in Kansas City, Missouri, and a year thereafter remodeled these buildings into at least twenty-three furnished room, or kitchenette, apartments. One of the buildings was remodeled so as to contain sixteen kitchenette apartments. There is no direct evidence as to the number of apartments in the other building but it is stated by defendant in his brief that the two contained twenty-five apartments. Defendant did not furnish all of the apartments at the beginning but at the time of the trial had furnished them all. During the period covered from the time he remodeled the property until he furnished all of the apartments, he rented some of the apartments unfurnished. Defendant testified that at the time of the trial there was but one apartment

not rented as a furnished apartment but, evidently, it, too, had been furnished at one time and later converted into an unfurnished apartment because he stated that the stove or range had been taken out of this apartment. He testified that at the time of the trial not one of the tenants had brought his own stove with him.

The facts further show that sometime prior to August 20, 1924, defendant orally contracted with Egender to furnish twenty-three of the apartments. Defendant testified that he only furnished sixteen apartments at that time. However, there is an inference from the evidence that he did in fact furnish twenty-three of the apartments for about August 23rd or 27th, 1924, he gave a chattel mortgage to Egender for $7000 worth of furniture that went into the apartments, including twenty-three breakfast sets, twenty-three refrigerators, twenty-three bath cabinets, twenty-three bridge lamps, twenty-three gas ranges, twenty-three mirrors, twenty-three rockers, and various other articles, including twenty-two living-room suites, twenty-four rugs and twenty-two kitchen cabinets.

The chattel mortgage also covered dressers, settees, rockers, chests, linoleum, carpets, window shades, damask, and defendant testified that he also put in the apartments napkins, knives, forks, dishes, etc., so that people who moved into a furnished apartment were not required to bring any furniture with them. In other words, the apartment was completely furnished. He further testified that Egender furnished all of the gas ranges; that his agreement with Egender provided that the latter was to put this furniture into the apartments and defendant was to pay for them. There is no direct evidence as to how he was to make such payment. However, there was a note given by defendant to Egender for $7000, dated August 27, 1924, secured by said chattel mortgage.

The evidence further shows that plaintiff sold the sixteen ranges in controversy to Egender for the purpose of installment into defendant's apartments. They were delivered into the apartments by plaintiff on August 20, 1924. Plaintiff's evidence tends to show that it had done practically no business with Egender prior to this time, that it had sold him but one stove. The ranges were connected up with the gas pipes in the apartments by a union which had a shut-off in connection therewith, which shut-off permitted the gas to be disconnected from the ranges without unscrewing the union. The agreement between defendant and Egender did not provide that the latter should connect the ranges and they were in fact connected by defendant who employed a "gas man" to do the work. The contract between plaintiff and Egender was that Egender was to pay cash for the ranges, which from the evidence, we take to mean cash within ten days. The evidence further shows that the gas ranges in question were furnished to the property by plaintiff in reliance upon its right to a mechanic's lien.

Egender did not pay for the stoves but on October 13, 1924, he was adjudged a bankrupt. However, prior to that time he sold the note and chattel mortgage to W. A. Hawkinson of the Swedish American Savings & Loan Association. On June 13, 1925, defendant gave a deed of trust to said Savings & Loan Association upon the property in question, describing it by lots and blocks, which mortgage covered the gas ranges in question. Defendant paid the balance due upon the note secured by the chattel mortgage out of the proceeds from this deed of trust on the real estate. The mortgage provided that the whole of the bond secured by the deed of trust should "be subrogated for further security to the lien, though released of record or by prior encumbrance or vendee's (vendor's) lien on said premises paid out of the proceeds of this loan."

Defendant testified to the effect that the ranges in controversy were not purchased until after the remodeling of the premises had been completed but there was evidence on the part of plaintiff that the remodeling was in process when the stoves were delivered. Defendant also testified that he did not intend that the furniture, including the gas ranges, or stoves, placed in the building should become a part of the realty but his intention was that it should remain personal property.

Defendant insists that the court erred in adjudging that plaintiff was entitled to a lien on the real estate for the ranges in question; that the stoves never became a part of the freehold but remained personal property such as ordinary household furniture.

No declaration of law having been asked or given, if the judgment of the court can be sustained on any theory, it is our duty to uphold it. We cannot pass upon the weight of the testimony but if there is any substantial testimony to sustain the finding of the trial court, the same will not be disturbed on appeal. [Vette v. Hackmann, 237 S. W. 802; Kirschbaum v. Northwestern Petroleum & Refining Co., 237 S. W. 547.] The authorities are not uniform concerning the lienability of gas ranges. However, the mechanic's lien law must be liberally construed and in determining the character of a disputed item as a fixture and as a part of the freehold, the rules governing the subject between vendor and vendee and mortgagor and mortgagee are applicable and not those which govern the subject between landlord and tenant. [Sosmon v. Conlon, 57 Mo. App. 25, 32.] In Crane Co. v. Construction & Real Estate Co., 121 Mo. App. 209, 219, the court said—

". . . a fixture of the class under discussion is made up of three elements, annexation, adaptation and intent. Of these in modern times the latter two are more important than the one relating to the method by which the chattel is attached to the freehold. Such annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of a

building, and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed.'' [See, also, Randall v. LeBron Electric Works, 1 Fed. (2d Series) 313, 314.] In the Crane case, l. c. 220, the court said, quoting from a Pennsylvania case—

'' 'The clear tendency of modern authority seems to be, to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the other tests seem to derive their chief value as evidence of such intention.''

In Banner Iron Works v. Aetna Iron Works, 143 Mo. App. 1, 6, the court said—

''The principal criterion is the intention with which the owner of the land or building put the material into the building or on the land—whether his purpose was to make it permanently a part of the land or tenement. If this was his purpose, then, though it is fastened to the freehold only slightly and may be displaced without injury to the freehold, it usually will be treated as a fixture and lienable. In the case of machinery or other articles furnished to a factory or place of business. an important circumstance, in the attempt to ascertain the intention of the proprietor, is the adaptability of the article or machine to the work or business of the place. [Thomas v. Davis, 76 Mo. 72.] If the thing furnished was necessary to that work or business, or necessary to the purpose for which the building was designed and used, or was a convenient accessory or commonly employed in connection with such business, the intention of the proprietor of the establishment to annex it permanently to the realty may be inferred.''

In the case at bar the evidence shows that while sometimes kitchenettes are built and rented unfurnished. they are usually rented furnished and in all cases where rented furnished a gas stove or range for cooking is supplied by the landlord. A witness who had built a number of kitchette apartments stated—

''All buildings I have ever built were furnished with stoves; I always figure they go with the building, a fixture.

''Q. When people move in those buildings they move in them already furnished? A. Yes, sir.

''Q. In fact, kitchenette apartments are something like a hotel. except they don't serve meals or have dining rooms? A. Yes, sir.''

It appears that kitchenette apartments were intended to furnish a place. very much like a hotel, for people to live, that is to say, they can rent and move into them and have a home without supplying any furniture whatever. The only difference between them and a hotel is that a means for preparing meals is supplied in a kitchenette. At the time of the trial the kitchenette apartments in controversy were all furnished in this manner and all but one of them

had a stove in it and that one had formerly contained a stove, but had been converted into an unfurnished apartment. None of the tenants in any of the apartments had furnished his own stove. If these ranges were not a necessity (and we are not holding they were not) the evidence shows they were at least a convenient accessory and commonly employed in connection with kitchenettes, and we think there is sufficient in the evidence from which the court sitting as a jury might infer that it was the intention of the defendant in supplying these stoves for them to become a fixture and a part of the realty. [Lyle v. Rosenberg, 192 Ill. App. 378; Dimmick v. Cook, 115 Pa. St. 573; Blanck v. Commonwealth Amusement Co., 127 Pac. (Calif.) 805; Stockwell v. Campbell, 39 Conn. 362; Erdman v. Moore & Co., 58 N. J. Law 445; Crane Co. v. Const. & Real Est. Co., supra; Brick & Mach. Co. v. Brick & Quarry Co., 151 Mo. 501, 512, 513, 514; Sosmon v. Conlon, supra; McCarthey Lumber & Const. Co. v. Kinder, 225 S. W. 1024; St. Louis Radiator Mfg. Co. v. Carroll, 72 Mo. App. 315; Heideger v. Atlantic Milling Co., 16 Mo. App. 327; Cooke v. McNeil, 49 Mo. App. 81; So. Elec. Supply Co. v. Rolla Elec. Light & Power Co., 75 Mo. App. 622.]

In matters of this kind in determining the intention of the proprietor, his own testimony of what he intended to do, is not binding upon the court as a matter of law; neither is his undisclosed purpose or intent in the matter so binding. See Cosgrove v. Troscher 70 N. Y. S. 764, 766, where the court said—

"The determination of the question may depend upon the intention of the owner, to be ascertained, not from his testimony as to what he intended, nor from any undisclosed purpose or intent which he may have had, but from his acts and conduct, and all the surrounding facts and circumstances."

The fact that there was a shut-off whereby the gas could be disconnected from these stoves throw little light upon the subject. The testimony shows that this shut-off was required by the city ordinance and that the gas could not be turned on without a permit from the city, so it appears that the stove could not be lawfully connected with the gas pipes in the building without the shut-off. It, therefore, would appear that the presence of the shut-off has little or no bearing upon the subject of the intention of the owner as he had no discretion in the matter. The exact purpose of this shut-off is not disclosed in the testimony. The requirement that the owner obtain a permit from the city before he could turn the gas into the stove by means of the shut-off was, no doubt, for the purpose of fire prevention in that the city was given an opportunity to inspect the appliances before the gas was turned into them.

From the authorities cited the question as to whether or not the stoves became a fixtures and part of the freehold is not conclusively

controlled by the fact that they could be easily disconnected and removed, and that they were regular stock stoves which were handled by retail dealers generally and not of special design or made especially for these buildings. We are not prepared to say that these circumstances present in this case, viewed in the light of all of the testimony, show as a matter of law that the intention was that these stoves were not to become fixtures and parts of the freehold.

It will be borne in mind that the question as to the intention of the proprietor in this matter is not for this court but for the trial court, there being sufficient testimony from which the latter court could infer that the intention of the defendant was that the stoves should become fixtures and a part of the premises. [Turner v., Wentworth, 119 Mass. 459.]

Defendant insists that it is conclusively shown that he intended that the stoves should not become anything more than mere personal property on account of the fact that he gave a chattel mortgage to Egender upon the furniture, including the stoves, or ranges, in question. It may be inferred from the evidence that this chattel mortgage was given not earlier than August 27, 1924. It was recorded on August 28, 1924, and dated August 23rd, but it purports to secure a note dated August 27th. If given on the last-mentioned date, it was seven days after the stoves were delivered on the premises and if given on the 28th, of course, it was eight days thereafter. A little more than nine months after the ranges were delivered, defendant gave a real estate mortgage upon the property including these same stoves. Assuming that the fact that he gave the chattel mortgage has some bearing upon his intention as to whether the stoves became fixtures, we do not think that the trial court was conclusively bound on the question of intention by the fact that the chattel mortgage was given, in view of the circumstance that defendant also gave a real estate mortgage upon the same property. Both of the mortgages were given after the stoves were furnished.

It has been held that where an article is so attached to the freehold as to become a fixture and a part of the freehold, but may be removed without damaging the premises, the fact that a chattel mortgage is given by the owner of the premises on the fixture is binding between the parties as to the fixture being personalty but it is not binding upon the rights of the person who furnished the fixture to have a mechanic's lien upon the premises in the absence of knowledge, actual or constructive, of the chattel mortgage. One cannot be deprived of his lien by any concealed purpose held by the owner of the premises. [Northwestern Lumber & W. Co. v. Parker, 125 Minn. 107; Hammond Lumber Co. v. Gordon, 258 Pac. 612; Patton v. Brick Co., 167 Mo. App. 8, 12.]

It is claimed that the evidence fails to show that Egender was a contractor or that plaintiff was a sub-contractor, but we think there is no merit in this contention.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.