[Civ. No. 17462.   First Dist., Div. One.   Sept. 3, 1957.]

A. M. GRUPP et al., Respondents, v. HARRY MARGOLIS
et al., Appellants.

Dreyfus & McTernan, Garry, Dreyfus, McTernan & Keller and Francis J. McTernan, Jr., for Appellants.

Morris M. Grupp for Respondents.

WOOD (Fred B.), J.—In March, 1953, the Karps borrowed $6,000 from defendants Harry and Ann Margolis, giving as security therefor a deed to certain real property and a bill of sale of certain dry cleaning equipment which had been in-

stalled in a building situate upon the real property. Later, the deed and bill of sale were superseded by conveyances back to the Karps who executed a deed of trust covering the real property and a chattel mortgage covering the equipment listed in the bill of sale.

In April, 1953, the Karps purchased certain equipment from U. S. Hoffman Company upon a conditional sales contract and installed it in the building above mentioned. In February, 1954, the contract was cancelled and the equipment removed by mutual agreement of Hoffman and the Karps. In March, 1954, Eli Rosen bought this equipment from Hoffman and sold it upon a conditional sales contract to the Karps who reinstalled it upon the premises. Thereafter Rosen sold his interest in the equipment and in the conditional sales contract to plaintiffs Grupp and Schiller.

Upon foreclosure of their deed of trust defendants Margolis bought the real property, claiming that they thereby acquired title to the equipment as fixtures. Grupp and Schiller claim that title to this equipment never passed from them or from their predecessors, the Karps having failed to make the payments called for by the conditional sales contract.

Judgment was rendered in favor of Grupp and Schiller based upon the following findings of fact, among others: (1) at the time of the loan the equipment in question was not on the premises and neither Margolis nor the Karps intended that this equipment was to become part of the security for the loan, nor did Margolis rely upon this equipment as security for the loan; (2) in executing the deed, the bill of sale, the deed of trust and the chattel mortgage, the parties thereto intended to and did treat the personal property on the premises as separate from the real property even though some of the property mentioned in the bill of sale and in the chattel mortgage was attached to the realty by various pipes, water pipes, fuel pipes, electrical and other connections and some was bolted or screwed to the realty; (3) that the several items of this equipment are connected to the building and to each other with threaded unions, pipes, bolts and nuts and can be disconnected without injury to the realty; their removal from the premises will not substantially injure or diminish Margolis' security; these items were thus installed and connected by the parties to the conditional sales contract with the intention that they remain personal property and were not so attached as to become a part of the realty and did not become fixtures. The evidence supports these findings.

[1] The items listed in the bill of sale and in the chattel mortgage were identical. Certain equipment was omitted from each and Margolis was informed that this was a partial listing. The equipment thus omitted was later replaced by the equipment involved in this suit. The chattel mortgage, in addition to listing specific items of equipment, declared that "all personal property placed on real property at 10 Dixon Court, Daly City . . . [the property described in the deed of trust] . . ., belonging to mortgagors herein shall to the extent of their interest become additional security under this Mortgage of Chattels."

These circumstances warrant an inference that Margolis, when he made the loan, intended to treat as personal property all of the equipment whether then in place or later to be installed and not to treat any thereof as any part of the real property secured by the deed or the deed of trust, nor to rely upon any thereof as if it were a part of his real estate security. Moreover, the chattel mortgage* itself did not indicate an intent to preclude the Karps from later installing equipment acquired under a conditional sales contract nor to prevent retention of title by the conditional seller pending payment of the purchase price. The chattel mortgage gave Margolis a lien upon after-installed personal property "to the extent" only of the Karps' "interest" therein.

In addition, there is evidence that nearly a year and a half after this equipment was first installed and about six months after it was installed the second time Margolis asked plaintiff Grupp whether the machinery in question was owned by Grupp or by Rosen and said that he, Margolis, might want to buy it from Grupp. There is evidence, also, that the first time that Margolis took the position that the machinery was his own was in January of 1955. This evidence furnishes an additional basis for an inference that Margolis made the loan with no intent of treating the equipment other than as personal property. Such intent is a sufficient basis for the finding or conclusion that Margolis never owned this equipment.

Accordingly, as against Margolis, there was nothing to prevent the Karps from buying this equipment on the installment plan and consenting to retention of title by the seller after installation and until payment of the purchase price in full, with right of removal upon default of the buyer.

---

*Margolis never took any steps to foreclose the chattel mortgage nor is he in this action asserting any right to the equipment in question based upon the chattel mortgage.

Defendants, in effect, make the additional argument that it is immaterial what their intent was when they made the loan, in respect to subsequently installed equipment becoming a part of the realty. They contend that the physical aspects of the installation constituted this equipment a part of the realty. They refer to the fact that some items were connected to the building and to each other with threaded unions, pipes, bolts and nuts and that two items of considerable weight rested on steel frames embedded in the concrete floor and thus had every aspect of permanency and met every objective test which, they say, should be considered as controlling over any subjective test concerning the intent with which the several items were installed.

That is not a realistic approach to the problem. We are not concerned solely with the mere physical aspects of the situation. We are concerned primarily with the intent of the parties in respect to this equipment and its installation. ■ "It is settled that *in disputes between private persons the intention of the parties is controlling in determining whether an article is a fixture and part of the realty or is personalty.* ■ In *M. P. Moller, Inc.* v. *Wilson,* 8 Cal.2d 31, 37 [63 P.2d 818], the rule is thus expressed: 'This court has recognized the test of intention to make the article a permanent addition to the realty as manifested by the physical facts, and has accepted the character of the annexation and the use for which the article is designed as subsidiary elements employed for the purpose of testing the intention of permanency. (*City of Los Angeles* v. *Klinker,* 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148]; *Gosliner* v. *Briones,* 187 Cal. 557 [204 P. 19]; *Oakland Bank of Savings* v. *California Pressed Brick Co.,* 183 Cal. 295 [191 P. 524]; *Lavenson* v. *Standard Soap Co.,* 80 Cal. 245 [22 P. 184, 13 Am.St.Rep. 147].) Thus whether an article is or was physically affixed to the buildings is only one of the criteria in determining whether there was an intention to make it a permanent accession to the real property.' " (*Southern Calif. Telephone Co.* v. *State Board of Equalization,* 12 Cal.2d 127, 134 [82 P.2d 422]; emphasis added. See also *Camp* v. *Matich,* 87 Cal.App. 2d 660, 666 [197 P.2d 345]; *Clifford* v. *Epsten,* 106 Cal.App. 2d 221, 225 [234 P.2d 687]; *Sampson* v. *Tangye,* 139 Cal.App. 2d 734, 736 [294 P.2d 41]; *Smidt* v. *Overholtzer,* 139 Cal.App. 2d 751, 754 [294 P.2d 64]; Holmes, *Classification of Fixtures for Assessment,* 29 Cal.L.Rev. 21, 22-23; Horowitz, *The Law of Fixtures in California,* 26 So.Cal.Law Rev. 21.)

Margolis relies heavily upon *Dauch* v. *Ginsberg*, 214 Cal. 540 [6 P.2d 952]. That case resembles the instant case to the extent only that it was a contest between a conditional seller and a prior encumbrancer over plumbing and heating equipment which had been installed in a building in much the same manner, physically, as the equipment here involved was installed. Beyond that, there is no perceptible resemblance between the two cases. In the Dauch case the loan was made for the purpose of constructing a hotel building. The owner and the encumbrancer contemplated and agreed that the security for the loan should be not only the real property but also the completed hotel building. The conditional seller of the plumbing and heating equipment knew there was a prior encumbrance against the completed structure; knew that the building was being erected for a hotel and for no other purpose; knew that the hotel could not be operated if the equipment in question were removed; and knew that such a severance would substantially diminish the security of the prior encumbrancer. In such a case it was held that the rights and claims of the conditional seller of the equipment must yield to those of the prior encumbrancer.

Here, in contrast, there was evidence that the building was not necessarily a single purpose structure. It was usable not only as a clothes cleaning establishment. It could be used for a warehouse, a laundry, a garage, a paint shop, a sheet metal shop or a plumbing business. The prior encumbrancer's security documents showed that he and the landowners (the Karps) treated the equipment, whether presently installed or that which might later be installed, as personalty, not as realty. These documents were of record and gave the plaintiffs and their predecessors notice that the prior encumbrancer so viewed and dealt with such equipment. Finally, the landowners by their conditional sales contract with plaintiffs' predecessor (Rosen),* agreeing to his retention of title until

---

*We are not undertaking to decide whether the findings in this action had reference to the first installation of this equipment. They definitely do apply to the second installation, by Rosen and the Karps.

The record has recently been augmented to show that upon motion of plaintiff the cross-complaint first filed herein (a cross-complaint which named the Hoffman Company as one of the cross-defendants and pleaded the original installation by Hoffman and the Karps as well as the reinstallation by Rosen and the Karps) was stricken from the files of the court.

The record has also been augmented to show an order of the trial court which struck from the record the testimony of Frederick Karp concerning conversations between him and one Bock, on the ground that Bock was an agent of Karp, not of Margolis.

the purchase price be paid, treated as personalty the particular items of equipment here involved.

Defendants also contend that claim and delivery does not lie for the recovery of this equipment by the plaintiffs. That is predicated upon the argument that the equipment is a part of the realty and falls with that argument. Moreover, a particular form of action is not especially significant when, as here, the plaintiffs plead and prove ownership and right of possession and have a prayer for general relief.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 3, 1957, and appellants' petition for a hearing by the Supreme Court was denied October 30, 1957. Carter, J., was of the opinion that the petition should be granted.