[Civ. No. 25859. Second Dist., Div. Two. July 27, 1962.]

KRUSE METALS MANUFACTURING COMPANY, Plaintiff and Appellant, v. UTILITY TRAILER MANUFACTURING COMPANY, Defendant and Respondent.

Jacob U. D'Angelo for Plaintiff and Appellant.

Robert M. L. Baker and Marvin M. Chesebro for Defendant and Respondent.

ASHBURN, J.—Plaintiff appeals from an adverse judgment in this materialman's lien case. It sought establishment and foreclosure of such a lien upon property of defendant Utility Trailer Manufacturing Company predicated upon plaintiff's fabricating and installing a "bag house" and blower system in a shed situated upon land owned by defendant Utility. The claim is that the bag house and blower system which plaintiff furnished were affixed to the land and thus had become a part of it. The court held to the contrary and plaintiff presents as the sole issue upon appeal the following: "Whether the labor performed and materials furnished by the plaintiff was a 'work of improvement' upon the real property of the defendant and respondent Utility Trailer Manufacturing Company."

The trial judge viewed the premises pursuant to stipulation of counsel and recorded in a memorandum opinion (which for purposes of this case should have the same efficacy as if it were a statement made by the judge into the reporter's transcript)[1] some of his observations, which are independent and affirmative evidence in the case (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 889 [264 P.2d 932]; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 654 [122 P.2d 576]; *Gates* v. *McKinnon,* 18 Cal.2d 179, 183 [114 P.2d 576]; *Sindell* v.

---

[1]Without it a presumption arises that the judge's inspection disclosed to him unrecorded facts sufficient to sustain the findings. (Cf. *Downey* v. *Santa Fe Transportation Co.,* 134 Cal.App.2d 720, 725 [286 P.2d 40].)

*Smutz,* 100 Cal.App.2d 10, 15-16 [222 P.2d 903]; *Lauder* v. *Wright Inv. Co.,* 126 Cal.App.2d 147, 151 [271 P.2d 970]; *Downey* v. *Santa Fe Transportation Co.,* 134 Cal.App.2d 720, 725 [286 P.2d 40]) and helpful to a correct understanding of the facts.

The so-called bag house and other alleged improvements were placed upon a corner of a large tract of property on which defendant Utility operates a large steel foundry. This corner area was leased by Utility to A. F. Holden Co. on a month to month basis and that company subleased to defendant Commercial Heat Treating Company, Inc.,[2] which company ordered the work that forms the basis of plaintiff's lien claim.

The bag house was installed in a shed occupied by Commercial which is 20 feet wide and 75 feet long; the balance of the property upon which appellant's other "improvements" were installed is not that of respondent Utility but is owned by E & B Associates. Commercial was engaged in heat treating of metal parts, which process involved sandblasting. It had plaintiff install the bag house in an old shed on the property which is described in the following extract from the court's memorandum opinion, viz.: "The real property in question is a sheet metal structure in a state of advanced deterioration and disrepair. In appearance the building looks to be at least fifty years of age and is used incident to iron foundry and related work. The services and materials supplied by plaintiff were not intended to improve or alter the building. Whatever changes were made in the building, such as cutting a hole through the roof and installing bolts, or bolt holes in the floor, were incident to the installation of the machinery and equipment. . . . The term 'bag house' is a complete misnomer and misleading so far as the legal issues involved in this case are concerned. The subject is not a 'house' in any sense of the word, but is a piece of equipment with four sides and a bottom shaped like a square funnel, and contains a series of nylon bags which filter sand and dust from air pumped into the container through conduits." The sandblasting required a system to collect the dust and sand and the blower system installed by plaintiff connected the bag house to existing sandblasting booths made of plywood.

---

[2]Though sued, Commercial Heat Treating Company, Inc., was not served and the action proceeded against defendant Utility Trailer Manufacturing Company alone.

A hopper which was included in plaintiff's claim was a separate movable work stand for use in sandblasting and it was not connected with the floor or anything else.

The claim of an improvement to respondent's property rests upon the manner of construction of the bag house. It had been purchased by plaintiff from the manufacturer and when installed rested upon a frame with four legs that were bolted to the cement floor of the shed. On the day of its installation Commercial Heat Treating Company gave to ''E B & Associates'' a chattel mortgage for $1,362.94 upon the bag house, blower and motor and controls,—a clear admission on its part of their continued status as personalty. These things remained on the Commercial area only from June until October when the chattel mortgage was foreclosed and the bag house, blower, etc. removed from the premises.

The court's memorandum says that the installation of the bag house did not improve or add value to defendant's property nor did its removal injure the same; the evidence is not to the contrary. The bolts were easily removed and a hole in the roof which was made so that the bag house could extend above it was closed by placing a standard size corrugated tin sheet over the opening through expenditure of one hour of a workman's time. The shed has since that time been used for storage by defendant. The trial judge said in his memorandum opinion: ''The machinery and equipment . . . constitute machinery and equipment used in manufacture which could be and were removed without injury to the premises. We had to search for 15 or 20 minutes to find the location of the former bolts in the cement floor. (Portions of the floor were covered with dirt a fraction of an inch thick.) The hole in the tin roof could be located, although there was some debate as to its whereabouts. The hole was readily patched and was no worse than other portions of the building, the walls and roof of which were in a state of disrepair and decomposition.'' Also: ''The machinery and equipment could have been set up in an open field. As a matter of fact the two bag houses which the Court observed on adjacent property were erected and operating outside of the adjacent buildings.'' These seem to have been bag houses which respondent has on its foundry property, all located outside of buildings and moved from time to time.

The question of whether a chattel which has been attached to realty becomes a fixture turns upon method of

annexation and in most instances the intent of the parties, presenting on appeal a question of fact or of mixed fact and law (22 Cal.Jur.2d § 5, p. 259; § 45, p. 331), and of course the trial judge's determination will not be overthrown when based upon substantial evidence and not opposed to applicable legal principles.

Attachment of a piece of equipment or other personalty to real estate through use of bolts (Civ. Code, § 660)[3] is not an exclusive test of whether it becomes a fixture. In the first place there must be permanent attachment, and reference in the statute to bolts and screws is but illustrative, not inclusive. *Fisher* v. *Pennington,* 116 Cal.App. 248 [2 P.2d 518]. After quoting section 660, Civil Code, the court said, at page 249: "In this section 'permanently attached to what is thus permanent' is the legal rule; 'as by means of cement, plaster, nails, bolts or screws' is merely illustrative. An article may be attached other than by the examples given." And at page 250: "The fact that a screw or nail fastens an article to the realty is not determinative of its permanent attachment to the realty."

*Murphy-Cantrell Co., Inc.* v. *Mulcahy,* 72 Cal.App. 426, 431 [237 P. 557]: "The fact, however, that the fixtures might have been attached to the building by means of nails, or bolts, or screws, or wire, does not necessarily force the conclusion that it was the intention of the parties that they should become a part of the freehold, but is important because it may well be considered as some evidence of such intention, while the fact that they were not so attached might be considered as some evidence that such was not the intention." *Gosliner* v. *Briones,* 187 Cal. 557, 559 [204 P. 19]: "This section of the code is simply a rule for general guidance, concerning itself more with ultimate than with probative facts. Whether or not in any case a building is 'permanently resting upon' the soil so as to be deemed 'affixed to the land' within the meaning of the section remains a question of fact

---

[3]Civil Code, § 660: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods."

to be determined upon the evidence of that case. [Citations.] As a general rule, the intent of the parties is a controlling criterion in ascertaining whether property is permanently attached to the land or retains its identity as personalty; the character of the annexation to the land or other realty and the use made of the property are important considerations, but in most cases are subsidiarily employed for the purpose of testing the intention of the parties." *M. P. Moller, Inc.* v. *Wilson*, 8 Cal.2d 31, 37 [63 P.2d 818] : "We find a growing tendency in the decisions to modify the common-law test of technical affixation to the structure. In one direction the modification as noted in the text cited and as illustrated by the decision in *City of Los Angeles* v. *Klinker*, 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148], tends to include as fixtures articles such as machinery whose permanent annexation is not manifested by the use of bolts, screws and the like, but which are of such weight and nature that the mere retention in place by gravity is sufficient to give them the character of permanency and therefore affixation to the realty. In another direction, however, there is a tendency to hold that even as against a subsequent purchaser without notice articles which technically would became fixtures within the common-law rule are not such where their nature and the use for which they are intended do not indicate a permanent connection with the realty, and they can be removed without serious injury to themselves or to the realty. [Citations.] This divergence, however, is apparent merely and is the result of the application of what has come to be recognized as the test of whether an article becomes a fixture when physical annexation fails as a sufficient and adequate test. This court has recognized the test of intention to make the article a permanent addition to the realty as manifested by the physical facts, and has accepted the character of the annexation and the use for which the article is designed as subsidiary elements employed for the purpose of testing the intention of permanency." See also *Grupp* v. *Margolis*, 153 Cal.App.2d 500, 503 [314 P.2d 820].

*Daniger* v. *Hunter*, 114 Cal.App.2d 796 [251 P.2d 353], an action to foreclose a mechanic's lien, involved sink units consisting of a gas stove, a sink and a refrigerator, the three fitting together as one unit. "The stove was not connected to the sink and was not connected to the building in any manner except by a gas pipe connection. The sink was connected to the building by the usual plumbing connections

and the refrigerator by an electric plug. The unit was so constructed that the drainboard of the sink extended over the refrigerator and was supported by it.'' (P. 797.) It was held that these sink units were chattels and not fixtures, the court saying, at page 797 : ''The principal question here involved is whether the sink units were fixtures. In *Andrews* v. *First Realty Corp.*, 6 Cal.App.2d 407 [44 P.2d 628], it was held that refrigerator equipment in an apartment house was not a fixture where it could be removed without damage and the coil was affixed to the refrigerator box by four removable bolts.'' At page 798 : ''While ordinarily a sink is 'built in' and made a part of the building, in the instant case it is part of a unit which is so constructed as to be easily disconnected and removed without damage to the realty or the article itself. Under such circumstances we conclude that these units were chattels and not fixtures.''

 The relation of the parties to the transaction plays a large part in determining whether a chattel when attached to realty becomes a fixture (22 Cal.Jur.2d, § 9, p. 268), and the rule applicable to vendor and purchaser or mortgagor and mortgagee applies to mechanics liens, not the rule governing trade fixtures. In such a case the law and facts will be liberally construed in favor of the existence of a fixture, an interest in the realty, as the result of affixation of personalty. *R. Barcroft & Sons Co.* v. *Cullen,* 217 Cal. 708, 714 [20 P.2d 665], establishes this proposition. It is there said: ''The next question to be determined is what test is to be applied in determining whether an article has become annexed to the realty, in a controversy between a mechanic's lien claimant and the conditional vendor of the article. The uniform weight of authority in other jurisdictions is to the effect that in determining whether or not a disputed item, attached to real estate, is personalty or realty, the rules governing the subject between vendor-vendee, or mortgagor-mortgagee, are applicable and not those which govern the subject between landlord and tenant. (*Security Stove & Mfg. Co.* v. *Stevens, supra* [222 Mo.App. 1029 (9 S.W.2d 808)] ; *Fehr Construction Co.* v. *Postl System of Health Building,* 288 Ill. 634 [124 N.E. 315] ; note, Ann. Cas. 1912B, p. 21, and cases cited.) . The reasoning in the above cases seems to embody a fair and just rule and one that is in accord with the general rules applicable to mechanics' liens.'' See also *Bell* v. *Bank of Perris,* 52 Cal.App.2d 66, 73 [125 P.2d 829].

■ The question of fixture or chattel remains one of fact, as shown by the above authorities. And the question of intent in affixing the chattel to the realty does not disappear under the Barcroft rule. However, it becomes one of objective intent rather than subjective. ■■ *Hammond Lumber Co.* v. *Gordon,* 84 Cal.App. 701, 705 [258 P. 612] : "Of course it is true, as said in *Gosliner* v. *Briones,* 187 Cal. 557 [204 P. 19], that generally the intent of the parties is a controlling criterion in ascertaining whether property is permanently attached to the land or retains its identity as personalty. This applies between the immediate parties to a transaction, such as mortgagor and mortgagee, vendor and vendee, etc., and their successors in interest. But where, as here, the rights of a person unconnected with that transaction are concerned, and who is without actual or constructive notice concerning the intent of the parties responsible for annexing the personalty to the realty, the question is not so much the intent of such parties as *the apparent intent as it would reasonably appear to such third person.*" (Emphasis added.)

■ The intent of installing the bag house and blower must have been apparent to plaintiff as it was to the trial judge when viewing the premises. Equally adaptable to use outdoors as inside a building, they were placed in a dilapidated shed in one corner of a large foundry plant and were attached in such manner as to be easily removed without injury to the property. This was done at the instance of a person other than the owner, one whose occupancy bore the earmarks of brief tenure. Commercial gave objective proof of its intent when it covered these appliances with a chattel mortgage on the day of their installation. Appellant has not successfully challenged the court's formal finding of truth of the following averment in the answer to the complaint: "That any purported improvements or work by plaintiff during the period referred to in plaintiff's complaint were not an improvement to the real property, but that the same were only work upon moveable personal property, no part of which ever became or is now a part of the real property."

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.