

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-76,141-01

### Ex parte ADAM BRANDON CREWS

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 22574-A FROM FANNIN COUNTY

*Womack, J., delivered the opinion of the unanimous Court.*

A jury convicted the applicant of aggravated kidnaping and assessed a punishment of fifteen years' imprisonment. On appeal, the Sixth Court affirmed the applicant's conviction and sentence. The applicant now seeks habeas corpus relief, which we shall grant.

The applicant alleges that his trial counsel provided constitutionally ineffective assistance of counsel at the guilt stage of his trial by failing to object to a video-recorded statement that repeatedly mentioned previous bad acts and contained the police investigator's opinions that the applicant was lying. The judge of the convicting court entered findings of fact and conclusions of law, and she recommended that we deny relief. Although the trial judge did find deficient

conduct on the part of the applicant's attorney, she found that he was not prejudiced by this conduct.[1]

We have reviewed the record, and we hold that it does not support the trial court's findings. We shall grant relief.

## Background

The applicant and the complainant, Stephanie Friedman, were involved in an on-and-off relationship that produced one child. In December 2006, Friedman ended the relationship because she found the applicant to be controlling and abusive. Unwilling to accept this, the applicant invited Friedman to a weekend getaway at his parent's unoccupied cabin in Ledonia, so that they could "work things out." Friedman agreed to go with him.

According to Friedman's testimony, when the two arrived at the cabin on Friday afternoon, the applicant became angry and abusive. He took her cell phone so that she could not call for help, yelled at her, accused her of infidelities, and subjected her to physical, sexual, and emotional abuse. Specifically, the applicant denied her food and water, groped her, threatened her with a lamp and a gun, and shoved her into a chair. Friedman testified that she was scared for her life, repeatedly requested that she be allowed to leave, and attempted to escape. The applicant responded by threatening them both with a firearm.

Finally, on Sunday morning, the applicant agreed to take Friedman home. During the entire drive, he threatened to take away everything she loved if she told anyone what had happened. Further, he said that his behavior was caused by her trying to end their relationship.

---

[1] The trial court filed two sets of conflicting findings. The first recommended that we grant relief and the second (on the State's motion for rehearing) recommended that we deny. In her second findings, the trial court used an incorrect standard for prejudice.

Their relationship did not end. Telephone records showed lengthy and frequent communication between the two, and there was testimony that Friedman spent Christmas Eve with the applicant's family.

However, by February 2007, the relationship had again deteriorated. Friedman got a protective order against the applicant, and she gave a statement to the police that resulted in the aggravated-kidnapping charge. The applicant gave investigators a videotaped non-custodial statement which would be introduced at the applicant's trial several years later.

During the interim between the statement and the trial, the applicant and the complainant resumed their pattern of intermittent dating. Friedman wrote a letter requesting that charges be dropped and stating that her words had been twisted and she had been manipulated into filing charges. She also sent the applicant nude photographs of herself.

By 2009, however, the relationship had again soured. Friedman testified against the applicant at trial. She said that, in response to her agreeing to testify, he had threatened her and told her to kill herself.

**The Statement**

Here, the applicant alleges that his trial attorney was constitutionally ineffective for failing to keep his video-taped statement to the police out of evidence. In it, the investigator and the applicant discussed the fact that he had three children by three different women and that he was not providing for those children, that he had committed "basically the same thing" in Tarrant County, and that the current charge read "almost word for word" like the complaint in the previous case. In total, there were thirteen references to the Tarrant County aggravated-assault charge, including the investigator's opinions that it must have included "grievous bodily injury"

and that he was almost charged with aggravated kidnapping. (The applicant was acquitted of the felony charge in Tarrant County, but he was convicted of misdemeanor family violence.)

Further, in the video, the investigator gave several opinions about the veracity of both the applicant and the complainant. He said that (given the similarities of the charges) the odds of the new complaint being false were "astronomical[ly] low," that (because she would lose child-support payments) Friedman had nothing to be gained by sending him to jail if he was not guilty, and that the judge who granted the protective order and the investigator who took the complainant's statement all believed he was guilty. Finally, the investigator asserted that he could tell the applicant was lying because he was showing "five out of seven clues of deception."

The applicant's trial counsel filed a motion in limine (which the trial court granted) to prevent the State from discussing prior bad acts. Counsel also objected to the video interview on the grounds that the applicant had not been properly advised of his rights. However, the video showed otherwise, and it was admitted. Because that was counsel's only objection, the Court of Appeals held that these other grounds were not properly preserved.[2]

### Ineffective Assistance of Counsel

A defendant has a Sixth Amendment right to effective assistance of counsel. Before we may grant relief on a writ of habeas corpus for ineffective assistance of counsel, an applicant must demonstrate that: 1) trial counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability, sufficient to undermine confidence in the outcome that, but for counsel's deficient performance, the result of the proceeding would have

---

[2] *See Crews v. State,* No. 06-09-00080-CR, 2009 Tex. App. LEXIS 9677 (Tex. App. – Texarkana December 22, 2009).

been different.[3] This two-pronged test is "the benchmark for judging … whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[4]

A reviewing court's scrutiny of counsel's performance is highly deferential and begins with the assumption that counsel's conduct fell within the wide range of reasonable professional assistance.[5] An applicant may overcome this strong presumption by proving trial counsel's ineffectiveness by a preponderance of evidence.[6]

In evaluating the effectiveness of counsel, the reviewing court looks at the totality of the representation and the particular circumstances of each case.[7] An applicant's failure to satisfy both prongs of the two-pronged test defeats a claim of ineffective assistance of counsel: if both prongs are not met, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable.[8]

### Deficient Performance: Prior Bad Acts

The applicant bears the burden of showing that his attorney's performance fell below an objective standard of reasonableness. In cases of failure to object to evidence, the applicant must show that the trial judge would have committed error in overruling such an objection.[9]

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[4] *Id.,* at 686.

[5] *Id.*, at 689; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Cr. App. 2009).

[6] *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Cr. App. 2011).

[7] *Ex parte Lane*, 303 S.W.3d at 707*; Ex parte Felton,* 815 S.W.2d 733, 735 (Tex. Cr. App. 1991).

[8] *Thompson v. State,* 9 S.W.2d 808, 812-13 (Tex. Cr. App. 1999).

[9] *Martinez,* 330 S.W.3d at 901.

The general rule, which is in Rule of Evidence 404(b), is that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[10] However, evidence of prior bad acts is admissible if it is offered for reasons other than character conformity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.[11]

It is clear that a prior assault would qualify as a prior bad act and would be inadmissible under 404(b) to prove character conformity. However, the prior bad act may have been admissible for another purpose.

Here, the State argues that the statement would have been admissible to rebut the defensive theory of fabrication. Indeed, this theory allowed the State to elicit from the complainant details of other times the applicant had been abusive towards her. We have stated that "evidence of extraneous offenses committed by the accused has been held admissible to refute a defensive theory raised by the accused. Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory."[12]

However, this evidence would have still been barred by Texas Rule of Evidence 403, which calls for the exclusion of otherwise admissible evidence if its probative value is substantially outweighed by factors such as a danger of unfair prejudice, confusion of the issues,

---

[10] TEX. R. EVID. 404(b).

[11] *Ibid.*

[12] *Wheeler v. State*, 67 S.W.3d 879, 887 n.18 (Tex. Cr. App. 2002).

or misleading the jury.[13] The statement's probative value is substantially outweighed by a combination of all three of those factors.

Because of the investigator's statements that the current and previous felony complaints were "almost word for word," this evidence had a substantial likelihood of unfair prejudice and confusion of the issues. The jury might have convicted based on the applicant's prior rather than the current offense. It would have been easy for them to assume that if he committed the crime once, he would have done it again – the very thing Rule of Evidence 404(b) seeks to prevent.

Further, the jury could have been misled by the investigator's comments and interrogation tactics. During the trial, he conceded that he lied to the applicant and distorted the facts in an attempt to obtain a confession.

We are not persuaded by the State's argument that counsel was using a sound trial strategy in order to allow the applicant to essentially testify without cross-examination. The record is replete with evidence that this was not the case. In counsel's original statement, he said that he should have objected. However, in a later affidavit, counsel said that he wanted the statement in because, in it, the applicant appeared clean-cut and calm despite the investigator's increasing hostility. Counsel's actions also belie his stated motivation. He filed a motion in limine objecting to prior bad acts, and he objected to the video itself (albeit on frivolous grounds). This conflicts sharply with his assurances that he believed the video would help his client.

Further, a clean-cut appearance and calm demeanor does not overcome the fact that counsel essentially allowed the applicant's character to be attacked with a felony for which he

---

[13] TEX. R. EVID. 403.

had not been convicted. We have held that, especially in cases resting on battles of credibility, it is unreasonable for counsel to offer evidence of prior misconduct, not withstanding a desire to make the applicant look honest.[14]

Counsel's performance was deficient in not objecting to the video statement on the grounds that it was evidence of prior bad acts.

### Prejudice: Prior Bad Acts

The second prong of *Strickland* asks whether the applicant was prejudiced by his counsel's deficient performance, or if, "taking into account the totality of the evidence before the judge or jury, there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[15]

The trial was primarily a battle of credibility between the complainant and the applicant. The applicant claimed that Friedman was a spurned lover who had teamed up with another of his ex-girlfriends to get revenge and sole custody of their child. He offered ample evidence that she sought him out after the relationship ended, sent him nude photographs of herself, and requested to have the charges dropped.

On the other hand, the State depicted Friedman as a battered woman who continued to go back to the applicant so that her daughter would be able to know her father. It presented evidence that the applicant intimidated Friedman to get her to stop cooperating with the police.

Contrary to the State's claim, there was not a mountain of evidence supporting the complainant's story. There was corroboration that the two went away for the weekend, but there

---

[14] *See Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Cr. App. 2006).

[15] *Martinez,* 330 S.W.3d at 900-01.

was almost no corroboration that Friedman was abused while they were together. The defense presented evidence that there was no damage to the house or its contents, and no one else testified to actually seeing the complainant's injuries. This case was, for all intents and purposes, a case of he-said, she-said. In such a situation, there is a reasonable probability that, without the police investigator's thirteen references to a prior offense that was embellished with hyperbole, the jury would have had a reasonable doubt as to the applicant's guilt.

## Conclusion

Accordingly, it is clear that counsel's performance was deficient and prejudiced the applicant. We grant relief and, accordingly, do not reach the applicant's second allegation.

The judgment in cause number 22574-A in the 336th District Court of Fannin County is set aside, and the applicant is remanded to the custody of the Sheriff of Fannin County. The trial court shall issue any necessary bench warrant within 10 days after the mandate of this Court issues. Copies of this opinion shall be sent to the Texas Department of Criminal Justice's Correctional Institutions Division and Pardons and Paroles Division.


Delivered: March 12, 2014
Do Not Publish.