IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






NO. WR-76,141-01






Ex parte ADAM BRANDON CREWS







ON APPLICATION FOR A WRIT OF HABEAS CORPUS 



CAUSE NO. 22574-A FROM FANNIN COUNTY

 


 Womack, J., delivered the opinion of the unanimous Court.


 

 A jury convicted the applicant of aggravated kidnaping and assessed a punishment of
fifteen years' imprisonment. On appeal, the Sixth Court affirmed the applicant's conviction and
sentence. The applicant now seeks habeas corpus relief, which we shall grant.

 The applicant alleges that his trial counsel provided constitutionally ineffective assistance
of counsel at the guilt stage of his trial by failing to object to a video-recorded statement that
repeatedly mentioned previous bad acts and contained the police investigator's opinions that the
applicant was lying. The judge of the convicting court entered findings of fact and conclusions of
law, and she recommended that we deny relief. Although the trial judge did find deficient
conduct on the part of the applicant's attorney, she found that he was not prejudiced by this
conduct. (1)

 We have reviewed the record, and we hold that it does not support the trial court's
findings. We shall grant relief.

Background

 The applicant and the complainant, Stephanie Friedman, were involved in an on-and-off
relationship that produced one child. In December 2006, Friedman ended the relationship
because she found the applicant to be controlling and abusive. Unwilling to accept this, the
applicant invited Friedman to a weekend getaway at his parent's unoccupied cabin in Ledonia, so
that they could "work things out." Friedman agreed to go with him. 

 According to Friedman's testimony, when the two arrived at the cabin on Friday
afternoon, the applicant became angry and abusive. He took her cell phone so that she could not
call for help, yelled at her, accused her of infidelities, and subjected her to physical, sexual, and
emotional abuse. Specifically, the applicant denied her food and water, groped her, threatened her
with a lamp and a gun, and shoved her into a chair. Friedman testified that she was scared for her
life, repeatedly requested that she be allowed to leave, and attempted to escape. The applicant
responded by threatening them both with a firearm. 

 Finally, on Sunday morning, the applicant agreed to take Friedman home. During the
entire drive, he threatened to take away everything she loved if she told anyone what had
happened. Further, he said that his behavior was caused by her trying to end their relationship. 

 Their relationship did not end. Telephone records showed lengthy and frequent
communication between the two, and there was testimony that Friedman spent Christmas Eve
with the applicant's family. 

 However, by February 2007, the relationship had again deteriorated. Friedman got a
protective order against the applicant, and she gave a statement to the police that resulted in the
aggravated-kidnapping charge. The applicant gave investigators a videotaped non-custodial
statement which would be introduced at the applicant's trial several years later. 

 During the interim between the statement and the trial, the applicant and the complainant
resumed their pattern of intermittent dating. Friedman wrote a letter requesting that charges be
dropped and stating that her words had been twisted and she had been manipulated into filing
charges. She also sent the applicant nude photographs of herself.

 By 2009, however, the relationship had again soured. Friedman testified against the
applicant at trial. She said that, in response to her agreeing to testify, he had threatened her and
told her to kill herself.

The Statement 

 Here, the applicant alleges that his trial attorney was constitutionally ineffective for
failing to keep his video-taped statement to the police out of evidence. In it, the investigator and
the applicant discussed the fact that he had three children by three different women and that he
was not providing for those children, that he had committed "basically the same thing" in Tarrant
County, and that the current charge read "almost word for word" like the complaint in the
previous case. In total, there were thirteen references to the Tarrant County aggravated-assault
charge, including the investigator's opinions that it must have included "grievous bodily injury"
and that he was almost charged with aggravated kidnapping. (The applicant was acquitted of the
felony charge in Tarrant County, but he was convicted of misdemeanor family violence.)

 Further, in the video, the investigator gave several opinions about the veracity of both the
applicant and the complainant. He said that (given the similarities of the charges) the odds of the
new complaint being false were "astronomical[ly] low," that (because she would lose child-support payments) Friedman had nothing to be gained by sending him to jail if he was not guilty,
and that the judge who granted the protective order and the investigator who took the
complainant's statement all believed he was guilty. Finally, the investigator asserted that he
could tell the applicant was lying because he was showing "five out of seven clues of deception."

 The applicant's trial counsel filed a motion in limine (which the trial court granted) to
prevent the State from discussing prior bad acts. Counsel also objected to the video interview on
the grounds that the applicant had not been properly advised of his rights. However, the video
showed otherwise, and it was admitted. Because that was counsel's only objection, the Court of
Appeals held that these other grounds were not properly preserved. (2)

 Ineffective Assistance of Counsel A defendant has a Sixth Amendment right to effective assistance of counsel. Before we
may grant relief on a writ of habeas corpus for ineffective assistance of counsel, an applicant
must demonstrate that: 1) trial counsel's performance fell below an objective standard of
reasonableness, and 2) there is a reasonable probability, sufficient to undermine confidence in the
outcome that, but for counsel's deficient performance, the result of the proceeding would have
been different. (3) This two-pronged test is "the benchmark for judging  whether counsel's
conduct so undermined the proper functioning of the adversarial process that the trial cannot be
relied on as having produced a just result." (4)

 A reviewing court's scrutiny of counsel's performance is highly deferential and begins
with the assumption that counsel's conduct fell within the wide range of reasonable professional
assistance. (5) An applicant may overcome this strong presumption by proving trial counsel's
ineffectiveness by a preponderance of evidence. (6)

 In evaluating the effectiveness of counsel, the reviewing court looks at the totality of the
representation and the particular circumstances of each case. (7) An applicant's failure to satisfy
both prongs of the two-pronged test defeats a claim of ineffective assistance of counsel: if both
prongs are not met, an appellate court cannot conclude that the conviction resulted from a
breakdown in the adversarial process that renders the result unreliable. (8)Deficient Performance: Prior Bad Acts 

 The applicant bears the burden of showing that his attorney's performance fell below an
objective standard of reasonableness. In cases of failure to object to evidence, the applicant must
show that the trial judge would have committed error in overruling such an objection. (9)

 The general rule, which is in Rule of Evidence 404(b), is that "evidence of other crimes,
wrongs or acts is not admissible to prove the character of a person in order to show action in
conformity therewith." (10) However, evidence of prior bad acts is admissible if it is offered for
reasons other than character conformity, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake. (11)

 It is clear that a prior assault would qualify as a prior bad act and would be inadmissible
under 404(b) to prove character conformity. However, the prior bad act may have been
admissible for another purpose. 

 Here, the State argues that the statement would have been admissible to rebut the
defensive theory of fabrication. Indeed, this theory allowed the State to elicit from the
complainant details of other times the applicant had been abusive towards her. We have stated
that "evidence of extraneous offenses committed by the accused has been held admissible to
refute a defensive theory raised by the accused. Probably the most common situation which gives
rise to the admission of extraneous offenses is in rebuttal of a defensive theory." (12) 

 However, this evidence would have still been barred by Texas Rule of Evidence 403,
which calls for the exclusion of otherwise admissible evidence if its probative value is
substantially outweighed by factors such as a danger of unfair prejudice, confusion of the issues,
or misleading the jury. (13) The statement's probative value is substantially outweighed by a
combination of all three of those factors. 

 Because of the investigator's statements that the current and previous felony complaints
were "almost word for word," this evidence had a substantial likelihood of unfair prejudice and
confusion of the issues. The jury might have convicted based on the applicant's prior rather than
the current offense. It would have been easy for them to assume that if he committed the crime
once, he would have done it again - the very thing Rule of Evidence 404(b) seeks to prevent. 

 Further, the jury could have been misled by the investigator's comments and interrogation
tactics. During the trial, he conceded that he lied to the applicant and distorted the facts in an
attempt to obtain a confession. 

 We are not persuaded by the State's argument that counsel was using a sound trial
strategy in order to allow the applicant to essentially testify without cross-examination. The
record is replete with evidence that this was not the case. In counsel's original statement, he said
that he should have objected. However, in a later affidavit, counsel said that he wanted the
statement in because, in it, the applicant appeared clean-cut and calm despite the investigator's
increasing hostility. Counsel's actions also belie his stated motivation. He filed a motion in
limine objecting to prior bad acts, and he objected to the video itself (albeit on frivolous
grounds). This conflicts sharply with his assurances that he believed the video would help his
client. 

 Further, a clean-cut appearance and calm demeanor does not overcome the fact that
counsel essentially allowed the applicant's character to be attacked with a felony for which he
had not been convicted. We have held that, especially in cases resting on battles of credibility, it
is unreasonable for counsel to offer evidence of prior misconduct, not withstanding a desire to
make the applicant look honest. (14)

 Counsel's performance was deficient in not objecting to the video statement on the
grounds that it was evidence of prior bad acts.

Prejudice: Prior Bad Acts

 The second prong of Strickland asks whether the applicant was prejudiced by his
counsel's deficient performance, or if, "taking into account the totality of the evidence before the
judge or jury, there is a reasonable probability that, absent the errors, the factfinder would have
had a reasonable doubt respecting guilt." (15)

 The trial was primarily a battle of credibility between the complainant and the applicant.
The applicant claimed that Friedman was a spurned lover who had teamed up with another of his
ex-girlfriends to get revenge and sole custody of their child. He offered ample evidence that she
sought him out after the relationship ended, sent him nude photographs of herself, and requested
to have the charges dropped. 

 On the other hand, the State depicted Friedman as a battered woman who continued to go
back to the applicant so that her daughter would be able to know her father. It presented evidence
that the applicant intimidated Friedman to get her to stop cooperating with the police. 

 Contrary to the State's claim, there was not a mountain of evidence supporting the
complainant's story. There was corroboration that the two went away for the weekend, but there
was almost no corroboration that Friedman was abused while they were together. The defense
presented evidence that there was no damage to the house or its contents, and no one else
testified to actually seeing the complainant's injuries. This case was, for all intents and purposes,
a case of he-said, she-said. In such a situation, there is a reasonable probability that, without the
police investigator's thirteen references to a prior offense that was embellished with hyperbole,
the jury would have had a reasonable doubt as to the applicant's guilt.

Conclusion

 Accordingly, it is clear that counsel's performance was deficient and prejudiced the
applicant. We grant relief and, accordingly, do not reach the applicant's second allegation. 

 The judgment in cause number 22574-A in the 336th District Court of Fannin County is
set aside, and the applicant is remanded to the custody of the Sheriff of Fannin County. The trial
court shall issue any necessary bench warrant within 10 days after the mandate of this Court
issues. Copies of this opinion shall be sent to the Texas Department of Criminal Justice's
Correctional Institutions Division and Pardons and Paroles Division.


Delivered: March 12, 2014 

Do Not Publish.
1. The trial court filed two sets of conflicting findings. The first recommended that we grant relief and the
second (on the State's motion for rehearing) recommended that we deny. In her second findings, the trial court used
an incorrect standard for prejudice.
2. See Crews v. State, No. 06-09-00080-CR, 2009 Tex. App. LEXIS 9677 (Tex. App. - Texarkana
December 22, 2009). 
3. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). 
4. Id., at 686. 
5. Id., at 689; Ex parte Lane, 303 S.W.3d 702, 707 (Tex. Cr. App. 2009). 
6. Ex parte Martinez, 330 S.W.3d 891, 901 (Tex. Cr. App. 2011).
7. Ex parte Lane, 303 S.W.3d at 707; Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Cr. App. 1991).
8. Thompson v. State, 9 S.W.2d 808, 812-13 (Tex. Cr. App. 1999). 
9. Martinez, 330 S.W.3d at 901.
10. Tex. R. Evid. 404(b). 
11. Ibid. 
12. Wheeler v. State, 67 S.W.3d 879, 887 n.18 (Tex. Cr. App. 2002). 
13. Tex. R. Evid. 403. 
14. See Robertson v. State, 187 S.W.3d 475, 484 (Tex. Cr. App. 2006).
15. Martinez, 330 S.W.3d at 900-01.