[S. F. No. 9031.  In Bank.—December 14, 1921.]

# EDWARD S. GOSLINER, Respondent, v. FRANK BRIONES et al., Appellants.

[1] APPEAL—FINDINGS—INSUFFICIENCY OF EVIDENCE—SPECIFICATION.—Where a bill of exceptions contains nothing which even purports to specify wherein the evidence fails to sustain any of the findings, the contention that the findings are not supported by the evidence cannot be considered.

[2] FIXTURES—QUESTION OF FACT—INTENT.—Whether or not in any case a building is permanently resting upon the soil so as to be deemed affixed to the land within the meaning of section 660 of the Civil Code remains a question of fact to be determined upon the evidence of that case, and, as a general rule, the intent of the parties is a controlling criterion.

[3] ID.—STRUCTURES ERECTED BY LICENSEE — OWNERSHIP.—Where structures are erected upon land by a person who occupies the land with the permission or license of the owner, but who has no estate in the land, consent on the part of the owner of the land that the structures shall remain the property of the person erecting them will be implied in the absence of any other facts or circumstances tending to show a different intention.

[4] ID.—DAMAGES FOR DESTRUCTION—PLACE OF TRIAL.—An action by a licensee to recover damages for the destruction of a dwelling and windmill erected by plaintiff on defendants' land was not improperly brought and tried in the county where two of the defendants resided, which was not the county in which the land was situated, since the action was based upon plaintiff's rights to the buildings as personal property.

[5] ID.—LIABILITY OF EMPLOYEE OF LAND OWNERS.—An employee of land owners who joined with them in demolishing buildings with full knowledge that they belonged to and were the personal property of the plaintiff is liable for damages.

[6] EMPLOYER AND EMPLOYEE—JOINT TORT—LIABILITY.—In the prosecution of actions for causes *ex delicto* all persons concerned in the commission of the tort may be joined as defendants, or either or any of them may be sued severally, and where an employer and an employee have participated in a tortious act against a third person, they may be jointly sued for damages.

[7] ID.—DAMAGES—EVIDENCE—COST OF REMOVAL OF DESTROYED BUILDINGS.—In an action by a licensee to recover damages for the de-

2.  Fixing character of property as realty or personalty, notes, 84 Am. St. Rep. 877; 1 Ann. Cas. 312.

struction of a dwelling and a windmill erected by him on land of defendants, where the agreement under which the buildings were erected required the plaintiff to remove the structures to his own land and the plaintiff sought to establish value merely ·by proof of the cost of construction, it was error to refuse defendants permission to prove the cost of removal in mitigation of the damage.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. W. H. Thomas, Judge presiding. Modified and affirmed.

The facts are stated in the opinion of the court.

George H. Harlan for Appellants.

Arnold C. Lackenbach for Respondent.

LENNON, J.—Plaintiff Edward S. Gosliner instituted the present action against defendants Frank Briones, William Latter, and Belle Latter for the purpose of recovering damages for the destruction of a certain dwelling-house and windmill alleged to have belonged to said plaintiff. Judgment was rendered in favor of plaintiff in the sum of twenty-five hundred dollars, the reasonable value of the demolished structures, and defendants appeal, relying upon a record consisting of the judgment-roll and a bill of exceptions. [1] Since the bill of exceptions contains nothing which even purports to specify wherein the evidence fails to sustain any of the findings, the contention that the findings are not supported by the evidence cannot be considered. (*Carter* v. *Canty,* 181 Cal. 749, 752, [186 Pac. 346].)

Summarizing the findings, then, we have the following facts before us on this appeal: In the year 1860 Charles A. Lauff sold to Pablo Briones an acre of land in Marin County, California, the deed being recorded at the time of the sale. Upon the death of Pablo Briones this land passed to his wife, Rafaela Briones, who, on January 25, 1915, deeded it to her son-in-law, defendant William Latter. In 1862, shortly after the sale of the land to Briones, Charles Lauff re-entered the said acre of land and from that year until May, 1916, it remained in the open, notorious, and continuous possession of the said Charles Lauff and various members of his family. In 1906 plaintiff Gosliner, the son-

in-law of Charles Lauff, erected upon this land a five-room dwelling-house and a large windmill. Neither of these buildings was ,firmly embedded in the soil; both were built upon heavy redwood mudsills placed upon the surface of the ground. Charles Lauff and his children consented to the erection of the buildings and it was agreed between them and the plaintiff that the buildings were not to remain permanently upon the land, but were to be left there only for a temporary period, until plaintiff was in a position to remove them to a near-by parcel of land which he owned. In the year 1915 defendant William Latter for the first time asserted his ownership in the aforesaid acre of land. A dispute concerning the title to the dwelling-house and windmill ensued, and ultimately, in September, 1916, defendants, without previous notice to plaintiff, entered the property and totally demolished and razed the said buildings. The trial court held that the buildings were personalty and the property of the plaintiff, and, accordingly, adjudged defendants liable for damages for their destruction.

Vital error was committed, defendants contend, in holding that the buildings did not pass as real property to the owner of the land upon which they rested, but continued to be personalty and remained the property of the person by whom they were erected. "Real or immovable property consists of: 1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law." (Civ. Code, sec. 658.) "Every kind of property that is not real is personal." (Civ. Code, sec. 663.) Consequently the buildings in question were personalty unless they were "affixed to the land," for, obviously, only in that sense can they be brought within the above classification of real property. "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." (Civ. Code, sec. 660.) This section of the code is simply a rule for general guidance, concerning itself more with ultimate than with probative facts. [2] Whether or not in any case a building is "permanently

resting upon" the soil so as to be deemed "affixed to the land" within the meaning of the section remains a question of fact to be determined upon the evidence of that case. (*Pennybecker* v. *McDougal,* 48 Cal. 160; *Miller* v. *Waddingham,* 91 Cal. 377, [13 L. R. A. 680, 27 Pac. 750].) As a general rule, the intent of the parties is a controlling criterion in ascertaining whether property is permanently attached to the land or retains its identity as personalty; the character of the annexation to the land or other realty and the use made of the property are important considerations, but in most cases are subsidiarily employed for the purpose of testing the intention of the parties. (*Hendy* v. *Dinkerhoff,* 57 Cal. 3, [40 Am. Rep. 107]; *Lavenson* v. *Standard Soap Co.,* 80 Cal. 245, [13 Am. St. Rep. 147, 22 Pac. 184]; *Jordan* v. *Myres,* 126 Cal. 565, [58 Pac. 1061]; *Western etc. Tel. Co.* v. *Modesto Irr. Co.,* 149 Cal. 662, 665, [9 Ann. Cas. 1190, 87 Pac. 190]; *Dutton* v. *Ensley,* 21 Ind. App. 46, [69 Am. St. Rep. 340, 51 N. E. 380].) In the present case the trial court found that the buildings were not embedded in the soil, but were constructed on mudsills placed upon the surface of the ground and that the plaintiff had no intention of permitting the buildings to remain on the land, but placed them there pursuant to an understanding that they should be removed therefrom. From these circumstances surrounding the erection of the buildings the trial court concluded that plaintiff never intended that his buildings should permanently rest upon the defendants' land, and this determination cannot be disturbed. (*Miller* v. *Waddingham, supra.*)

Defendants claim, however, that the intent of the plaintiff in placing the buildings upon the land is of no importance in the instant case, for the reason that there is no finding that the owners of the land agreed that they should remain personal property. It is claimed that the rule applies that improvements placed upon land by a stranger without an agreement permitting their removal follow the tenure of the soil on which they are erected. (Civ. Code, sec. 1013; *Collins* v. *Bartlett,* 44 Cal. 371; *McKiernan* v. *Hesse,* 51 Cal. 594; *Prescott & A. C. Ry. Co.* v. *Rees,* 3 Ariz. 317, [28 Pac. 1134]; *Crest* v. *Jack,* 3 Watts (Pa.), 238, 27 Am. Dec. 353.) But in the cases last cited there is no clear showing that the person placing the improvements upon

the land intended that they should continue separate and distinct from the realty; they are, for the most part, instances where a person has caused personal property to be annexed to real property of another without the latter's consent, with the intent that it should be permanently attached thereto but under a mistaken belief as to the ownership of the real property. In the present case there was, it is true, a mistaken belief concerning the ownership of the land, but, in addition to that, there was an intent that in any event the buildings should not remain upon or become a part of the realty, and, therefore, in view of this intent, it is doubtful whether, even under the rule relied upon by defendants, the buildings would be deemed to have become affixed to the land so as to pass to the owner of the soil.

It is, however, unnecessary to decide that question, for the facts of this case bring it within a well-settled exception to the above-mentioned rule. [3] Whatever the rights of a trespasser or entire stranger may be, the rule is that where structures are erected upon land by a person who occupies the land with the permission or license of the owner but who has no estate in the land, that is to say, by a mere licensee, consent on the part of the owner of the land that the structures shall remain the property of the person erecting them will be implied in the absence of any other facts or circumstances tending to show a different intention. (*Merchants' Nat. Bank* v. *Stanton,* 55 Minn. 211, [43 Am. St. Rep. 491, 56 N. W. 821]; *Joplin Supply Co.* v. *West,* 149 Mo. App. 78, [130 S. W. 156, 161]; *Fischer* v. *Johnson,* 106 Iowa, 181, [76 N. W. 658].) There is no finding that the owner of the land granted Lauff or the plaintiff express permission to occupy the land, but a direct authorization is not essential to establish an occupancy by virtue of permission or acquiescence of the owner; a license may result from circumstances as, for instance, where a person has continued in possession for such a length of time and under such circumstances that objection might well have been expected had there been no assent. (*Fischer* v. *Johnson, supra; McCann* v. *Thilemann,* 36 Misc. Rep. 145, [72 N. Y. Supp. 1076].) The trial court found that Charles Lauff and members of his family had been in open, notorious, and continuous possession of the land from 1862 until 1916 and that the buildings erected by plaintiff remained on the

property without objection from 1906 until 1915. These findings, when considered in connection with the other facts found, are tantamount to a finding that Charles Lauff and his family were licensees and not mere trespassers, and since the findings do not show any facts or circumstances revealing a different intent upon the part of the owner of the land, the court below was correct in holding that the buildings did not become affixed to the land irrespective of plaintiff's intention that they should remain separate.

[4] Our determination of this point in effect disposes of the defendant's objection to the overruling of a demurrer to the complaint for lack of jurisdiction. The present action was brought in the superior court of the city and county of San Francisco, which defendants claim was without jurisdiction to try the case by reason of the fact that the land upon which the buildings were erected is situated in Marin County and that the present action involves the right to the use of that land. Section 5 of article VI of the constitution of California provides that ''all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate, shall be commenced in the county in which the real estate, or any part thereof, affected by such action or actions is situated,'' and section 392, subdivision 1, of the Code of Civil Procedure requires that actions ''for the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property,'' shall be tried in the county in which the subject of the action, or some part thereof, is situated. The present action, however, is based upon plaintiff's right to the buildings as *personal* property, and it was solely upon that theory that he recovered judgment. The complaint practically alleged all title and interest in the land to be in defendant William Latter. It is true that there were allegations of facts tending to show that plaintiff was in the position of a licensee in erecting the buildings, but a mere licensee is but one remove from a trespasser and possesses no estate or interest in the land itself. (*Norfolk etc. Ry. Co.* v. *Denny's Admr.*, 106 Va. 383, [56 S. E. 321]; *Brown* v. *Boston & M. R. R.*, 73 N. H. 568, [64 Atl. 194, 199]; *Fischer* v. *Johnson, supra.*) It was, therefore, not improper to bring and try the action in the city and county of San Francisco,

where two of the defendants resided. (Code Civ. Proc., sec. 395.)

It appears from the findings that in 1917 Charles Lauff and his children instituted an action against defendants William and Belle Latter and others for the purpose of quieting title to the acre of land upon which the buildings here in controversy were erected "together with the improvements thereon." The judgment in that action, which is set forth in the findings in the present case, decrees that William and Belle Latter are the owners of the said land "together with the improvements thereon." Defendants contend that plaintiff claims through Charles Lauff and that he is, therefore, bound by the judgment against the said Lauff and his children and in favor of the said defendants. Assuming that plaintiff does claim through Lauff and his family, he is not prevented from suing for the value of the buildings he erected because of the judgment against Lauff. The findings of the present case disclose that the two buildings in controversy were totally destroyed in September, 1916, prior to the suit to quiet title. It is, therefore, evident that the words "improvements thereon" in the judgment in the suit to quiet title do not refer to the two buildings erected by plaintiff, which were not in existence at the time of that suit.

[5] The fact that defendant Frank Briones was an employee of defendants William and Belle Latter in removing the house and windmill does not relieve him from liability for his acts. The court found that defendant Briones joined with the other defendants in demolishing the buildings, with full knowledge that they belonged to and were the personal property of the plaintiff. [6] In the prosecution of actions for causes *ex delicto* all persons concerned in the commission of the tort may be joined as defendants, or either or any of them may be sued severally, and where an employer and an employee have participated in a tortious act against a third person, they may be jointly sued for damages. (*Rogers* v. *Ponet,* 21 Cal. App. 577, 581, [132 Pac. 851].)

[7] In one particular, however, error prejudicial to defendants was committed, namely, in a ruling respecting evidence concerning the amount of damages sustained by the plaintiff. The trial court found "That the reasonable

value of said dwelling-house at the time it was demolished by said defendants was the sum of twenty-two hundred and fifty ($2250) dollars; that the reasonable value of the said windmill at the time it was demolished by said defendants was the sum of two hundred and fifty ($250) dollars,'' and rendered judgment against defendants in the sum of twenty-five hundred dollars. The bill of exceptions shows that counsel for defendants made a formal offer to prove that it would have cost the sum of one thousand dollars to move said buildings from the acre of land upon which they were built to the land owned by plaintiff Gosliner, but the trial court refused to permit the introduction of this evidence and sustained plaintiff's objection thereto upon the ground that it was incompetent, irrelevant, and immaterial.

The following evidence as to the value of the buildings is contained in the bill of exceptions: Plaintiff testified, ''I paid for all the work and all of the materials. The entire cost of the house and windmill to me was about twenty-five hundred dollars.'' A carpenter who worked on the house stated: ''The value of this particular house was about twenty-five hundred dollars.'' Assuming that it cost twenty-five hundred dollars to build the house and windmill, nevertheless plaintiff had no right to maintain them on the premises where they were located. The agreement under which he built required him to remove the structures from the land on which they were erected to his own lots, a mile away. The difference between the cost of erecting similar buildings upon his own lots and the amount it would have to cost to remove the old buildings from defendant's land to his own lots, assuming the buildings to be equally valuable on both pieces of land, would represent the measure of the damages sustained by plaintiff as a result of the destruction. If the cost of construction is twenty-five hundred dollars, and the cost of removal would have been one thousand dollars, then plaintiff should not have been allowed more than fifteen hundred dollars damages. If the plaintiff had undertaken to establish the market value of the house as personal property subject to removal, evidence of the cost of removing the house to a particular lot would have been immaterial. But where he sought to establish the value of the house merely by proof of the cost of construction or its value where located, it was

proper to show the cost of removal of the house to the lot to which the plaintiff claimed he intended to remove it. (*Penny-becker* v. *McDougal,* 48 Cal. 160, 164.) It is clear that the finding of the court that the destruction of the buildings damaged plaintiff to the extent of twenty-five hundred dollars cannot be sustained in view of the showing in the record that the court refused to take into consideration the fact that the utilization of the buildings by plaintiff would have necessitated an expenditure by him of one thousand dollars. Defendants were entitled to introduce evidence upon the question of the cost of removing the buildings for the purpose of mitigating damages, and since the fact appears affirmatively in the bill of exceptions that the court made a ruling excluding material and competent evidence on this question, the judgment must be reversed.

The judgment is reversed.

Shurtleff, J., Wilbur, J., Sloane, J., and Shaw, C. J., concurred.

On petition for modification of judgment, the supreme court made the following order on January 13, 1922:

THE COURT.—The judgment of twenty-five hundred dollars as damages for the destruction of a certain dwelling-house and windmill belonging to the plaintiff having heretofore been reversed because of the erroneous ruling of the trial court refusing to permit the defendants to show in evidence, in diminution of damages, that it would have cost the plaintiff the sum of one thousand dollars to move the said buildings from the land upon which they were situated; and the plaintiff having, on the twentieth day of September, 1921, filed with his petition for a modification of the judgment a remission of the said sum of one thousand dollars, and an agreement that the judgment be modified by striking therefrom the sum of one thousand dollars, and as so modified stand affirmed, it is, therefore, ordered that the judgment of the superior court be modified by striking therefrom the sum of one thousand dollars, and as so modified that it stand affirmed, the plaintiff, however, to have his costs on appeal.

Lennon, J., Waste, J., Shurtleff, J., Shaw, C. J., Sloane, J., Lawlor, J., and Wilbur, J., concurred.