**In re OAK CREEK ENERGY FARMS, LTD., Debtor.**

**ENERGREY ENTERPRISES, INC., Plaintiff,**

**v.**

**OAK CREEK ENERGY SYSTEMS, INC., Dean Beckett, Steve Cummings, Oak Creek Energy Farms, Ltd., Defendant.**

**Bankruptcy No. 187–00644–A–11. Adv. No. 187–0104.**

United States Bankruptcy Court, E.D. California, Fresno Division.

June 9, 1989.

---

Leslie A. Cohen, Levene & Eisenberg, Los Angeles, Cal., for Gary H. Goldstick, trustee.

Philip A. Gasteier, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for Energrey Enterprises, Inc.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

### INTRODUCTION

ENERGREY ENTERPRISES, INC., Plaintiff, (hereinafter referred to as "ENERGREY") initiated its original action in State Court. After OAK CREEK ENERGY SYSTEMS, INC. (hereinafter referred to as "SYSTEMS") and OAK CREEK EN-ERGY FARMS, LTD. (hereinafter referred to as "FARMS") filed their Petition for protection under Chapter 11 of the Bankruptcy Code, ENERGREY removed its State Court action to the Bankruptcy Court. Philip A. Gasteier and appeared as attorney for ENERGREY ENTERPRISES, INC.; Leslie A. Cohen and David A. Neale appeared as attorneys for the Trustee, Gary H. Goldstick. There was no appearance for DEAN BECKETT OR STEVE CUMMINGS, Defendants in this action. By agreement of counsel for ENERGREY and the Chapter 11 Trustee for SYSTEMS and FARMS, the second and third issue to be tried and argued are the amount of claim to be allowed in favor of ENERGREY and whether or not there exists a Mechanic's Lien on the alleged work of improvements, including the turbines. On April 3, 1989, 99 B.R. 36, a decision was given that ENERGREY's Mechanic's Lien on real property had been lost through foreclosure. Evidence was taken, briefs were submitted, and arguments were made before the Court, commencing at 10:00 a.m. on May 11, 1989.

### FINDINGS OF FACT

1. OAK CREEK ENERGY FARMS, LTD. is a limited partnership composed of OAK CREEK ENERGY SYSTEMS, INC. as a general partner and DEAN BECKETT and STEVE CUMMINGS as limited partners.

2. OAK CREEK ENERGY SYSTEMS, INC. is a California corporation. The stock is owned by DEAN BECKETT and STEVE CUMMINGS.

3. For whatever reason, the above entities were formed, and assuming it to be a legal reason, they are two separate entities.

4. FARMS owned real property known as Oak Creek Farms. This real property is located in Tehachapi, California.

5. FARMS leased the subject real property to SYSTEMS.

6. ENERGREY contracted in writing with the Lessee of the real property, to wit: SYSTEMS, to build cement foundations for wind turbines.

7. ENERGREY performed their contract, and SYSTEMS was billed approximately $1,200,000. They paid about $720,000, leaving a balance of close to $483,880.00, plus interest and attorney fees.

8. ENERGREY filed its notice claiming a Mechanic's Lien against SYSTEMS' property, filed their lawsuit to foreclose, filed an Amended Notice and Complaint to insert as a Defendant FARMS (the owner of the real property). At this point, the Mechanic's Lien foreclosure action was transferred from State Court to Bankruptcy Court. The effect of the above facts is somewhat in dispute, but it is not necessary to decide these issues at this time.

9. Both FARMS and SYSTEMS filed a Chapter 11 Petition in the above-entitled court on February 24, 1987, a date prior to the above action being transferred from State Court to Bankruptcy Court.

10. The real property owned by FARMS was subject to a Deed of Trust eventually acquired by the Nottingham Group. The real property was subject to other liens, Deeds of Trust and the alleged lien of ENERGREY. For purposes of this decision, it will be assumed that ENERGREY's Mechanic's Lien against FARMS was perfected. (The Trustee claims that the lien was filed after 90 days from completion of the work. Energrey denies this allegation.)

11. At an early date in the bankruptcy proceedings, the Nottingham Group filed its Motion/Complaint for relief from the automatic stay so they could foreclose on the real property. ENERGREY objected. The hearing was continued several times, but eventually the Nottingham Group and the Debtor-in-Possession, SYSTEMS, entered into a stipulation approving the Court's granting relief from stay. This action was consented to by the Creditors' Committee (turbine owners) and others and was in contravention of the objection of ENERGREY. The Court then approved the stipulation. At this point in time, no Trustee had been appointed. SYSTEMS was acting as a Debtor-in-Possession pursuant to the Bankruptcy Code provisions that came into effect as a result of the Chapter 11 filings on February 24, 1987.

12. At some point in time it was agreed (except by ENERGREY) that, pursuant to the Power of Sale provisions in its Deed of Trust on the real property, the Nottingham Group would foreclose. They would then, by a separate document, lease the property to SYSTEMS, Debtor-in-Possession. The Lease also contained an option to purchase by the Debtor-in-Possession or its successor. The effect of the foreclosure, lease and option would be to cutoff the junior liens and mortgages, including ENERGREY'S.

13. The foreclosure was accomplished and the Lease became effective. No one appeared at the foreclosure sale to overbid the Nottingham Group's obligation although all parties, including ENERGREY, had prior notice of the foreclosure sale date and place.

14. Gary H. Goldstick was appointed Chapter 11 Trustee for FARMS and SYSTEMS on May 10, 1988.

15. The Court finds that ENERGREY did not contract with FARMS to place grout around the base of the towers covering the exposed portion of the bolts and threaded rods. As a result, the Court finds that the Trustee is not entitled to a set-off of $33,600.00.

16. The Court finds that it was the intent of the owners of the towers and related machinery to keep said property as personal property and not fixtures permanently attached to the real property.

17. The Court finds that the cement foundations installed by ENERGREY on FARMS' land were fixtures attached to the real property.

## DISCUSSION

The issues before the Court are here as a result of an agreement with both counsel, with the approval of the Court, and are as follows:

1. What is amount of the claim owing to ENERGREY? It is the understanding of the undersigned that arguments regarding amount and validity of pre- and post-petition interest and attorney fees will be reserved for further argument.

2. Does ENERGREY's Mechanic's Lien attach to the foundations, towers, and other related items separate and apart from the real property?

As to the first issue, the Trustee does not dispute the claim of ENERGREY in an amount of $483,880.00. There is some dispute as to pre-petition interest, post-petition interest, and attorney fees, and that matter will be settled at a later date. The Trustee does allege that they are entitled to a set-off in the sum of $33,600.00. This figure represents the cost to grout 140 towers. As grounds for the set-off, the Trustee alleges that ENERGREY did not perform its contract, which by its terms incorporates plans and specifications prepared by Patrick and Henderson. Those plans and specifications provide in the notes for how the concrete foundations are to be constructed. The notes do not mention grout. The pictures above the notes on the plans, pages one and three, show that the exposed part of the bolts at the threaded rods should be grouted. Page five of Exhibit A does show in the drawing that the exposed bolt and threaded rods are to have a two inch cover of dry pack or grout to be completed after the towers are installed and the levelling and adjustments have been completed. The testimony of an owner and an employee of ENERGREY was that the principals of SYSTEMS did not require grouting, and that ENERGREY was not to include a cost in their contract for grouting. There was testimony that ENERGREY had not grouted other towers of this type. Section 1856 of the Code of Civil Procedure for the State of California was amended in 1978 to allow for clarity in the admissibility of extrinsic evidence to explain the meaning of a written contract. That section at paragraph (a) states:

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement."

Paragraph (c) under Section 1856 states: "The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance."

Paragraph (g) states:
"This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

It seems clear to the Court that the "course of performance" by the principals of OAK CREEK SYSTEMS and OAK CREEK FARMS was to not require grouting. The Court finds that it was the intent of ENERGREY and SYSTEMS, through its officers and management, not to require grouting as a part of their contract, and, as a result, there will be no allowance for any offset for ENERGREY's failure to grout.

The second issue must be analyzed in two parts. The first part is whether or not the towers, the motor, the blades, and related items are personal property or real property and how "work of improvement" fits into the picture. By way of background, at some point in time DEAN BECKETT and STEVE CUMMINGS saw an opportunity to turn some barren hills located in the Tehachapi mountains into a wind park. They saw an opportunity to sell wind towers to various investors. The electricity could be sold, and the owners would receive an income and be allowed to take a large tax deduction. In order to complete the project, SYSTEMS hired ENERGREY to lay a cement foundation in the ground, after which the towers would be installed, the lines laid, and hopefully the wind would be converted into electricity to be sold to the power company. Towers were owned by a mixture of people, partnerships, joint ventures, and corporations. There is no evidence before the Court that these towers were intended to be works of improvement or fixtures permanently affixed and installed; no evidence they were to remain upon one cement block foundation, never to be repaired by being disassembled, and were to be taxed as a part of

the real property. In fact, to the contrary, the evidence indicates that the towers would, if necessary, be moved to a different location to gain a better advantage in the wind. It was certainly implied that the towers would be removed or dismantled for repair situations. The evidence indicates that the towers were taxed as personal property from the beginning. ENERGREY failed to carry its burden of proof showing that these towers were to become "fixtures" when they were bolted to the cement foundation. This requires a finding that they were not fixtures and that they were personal property. It is equally clear that the cement foundations poured into the ground were fixtures attached to, and became a permanent part of, the real property.

This Court has already ruled that, because of a foreclosure on the Nottingham property, ENERGREY's Mechanic's Lien on real property was wiped out, and they have no security interest in the real property, which would of course mean the foundations.

 ENERGREY argues that there can be a separate lien, separate and apart from the real property, on something called "works of improvement." They cite California Civil Code section 3128, which provides as follows:

"The liens provided for in this chapter shall attach to the work of improvement and the land on which it is situated together with a convenient space about the same or so much as may be required for the convenient use and occupation thereof, if at the commencement of the work or of the furnishing of the materials for the same, the land belonged to the person who caused such work of improvement to be constructed, but if such person owned less than a fee simple estate in such land then only his interest therein is subject to such lien, except as provided in Section 3129."

Section 3106 of the California Civil Code defines work of improvement as follows:

" 'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings. Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvements as a whole."

In his argument, Mr. Gasteier states that his clients' Mechanic's Lien attaches to the work of improvement. He quotes Section 3128, California Civil Code. What he neglects to do is read the entire sentence, which states: "The liens provided for in this chapter (Article 5 Property Subject to Mechanic's Liens) shall attach to the work of improvement and the land on which it is situated together with a convenient space ..." The section does not say "work of improvement *or* the land." It states in the conjunctive that the lien attaches to the "work of improvement *and* the land." As Ms. Cohen stated in her oral argument, "The concept of a lien attaching to a work of improvement appears in the cases, including the cases cited by Mr. Gasteier, to enable the lien to attach to that portion of the real property that is found to constitute the work of improvement." As Mr. Marsh stated in his book entitled *California Mechanic's Lien Law Handbook*, section 4.15 at page 37, "An item of personal property is subject to a mechanic's lien only if the installed chattels have been metamorphosed into fixtures attached to the realty, and have thus become a part of the realty itself." In other words, personal property cannot be subject to a mechanic's lien. It is only when personal property becomes a fixture, which may or may not be a work of improvement, on a parcel of real property that it becomes subject to the mechanic's lien.

The issue in its narrowest sense is that personal property can never be a work of improvement under California Civil Code 3106 but a fixture can be a work of improvement. As to whether or not it is

personal property or a fixture is a matter of fact to be determined by the trial judge. This was set forth in the Ninth Circuit Court of Appeals Case entitled *Abrenilla, et al., v. China Insurance Company, et al.,* 870 F.2d 548 (1989).

## CONCLUSIONS OF LAW

On or about May 10, 1989, ENERGREY filed its claim for $483,880.00, plus pre- and post-petition interest and attorney fees. The Trustee alleges an offset of $33,600.00 based upon certain provisions of the written contract identified as Exhibit "A." The Court has concluded that, because of the past practices of FARMS and because of an ambiguity in various pages of the written plans, it was necessary to look to extrinsic evidence as allowed by California Code of Civil Procedure section 1856. The evidence is clear and uncontradicted that ENERGREY's contract with FARMS did not include grouting the base of the towers. As a result, ENERGREY is entitled to a claim, unsecured, in the sum of $483,880.00, plus allowable interest and attorney fees that are either agreed upon by the parties or proven at a subsequent proceeding.

California Civil Code section 3128 provides that a Mechanic's Lien attaches to the work of improvement and the land on which it is situated together with a convenient space about the same, or so much as may be required for convenient use and occupation thereof. A work of improvement is defined by California Civil Code section 3106 in part as construction, alteration, addition to, or repair, in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, et cetera. The Ninth Circuit, in the case of *Abrenilla, et al., v. China Insurance Company, et al., supra,* states that it is a question of fact to be decided by the trial judge as to whether or not an item is a fixture and thus a part of the real property or personal property. California Civil Code section 663 says anything that is not real property is personal property.

The Court concludes that the towers, motors, machinery, and related articles are personal property. Since personal property is not subject to a Mechanic's Lien, ENERGREY has no security interest in those items.

ENERGREY did have an interest in the foundations, which the Court finds to be fixtures attached to the real property, but that interest was lost as a result of the Nottingham foreclosure, at least in regard to those foundations covered by that foreclosure proceeding.

## JUDGMENT

Based upon the accompanying findings of fact, discussion, and conclusions of law, the Court finds that ENERGREY has a valid claim, unsecured, in the sum of $483,880.00, plus allowable interest and attorney fees that are either to be agreed upon by the parties or proven at a subsequent hearing. The Trustee is not entitled to any set-off of $33,600.00 or any other sum.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that ENERGREY's Mechanic's Lien, considered valid for purposes of this Decision, does not attach to the towers, motors, blades, and related items situated on what has been described as the Nottingham Property, as these items are found to be personal property.