**ENERGREY ENTERPRISES, INC., Plaintiff,**

v.

**OAK CREEK ENERGY SYSTEMS, INC., Dean Beckett, Steve Cummings, Oak Creek Energy Farms, Ltd., Defendant.**

Nos. CV–F–89–571 REC, 187–0064–A–11. Adv. No. 187–0104.

United States District Court, E.D. California.

Aug. 10, 1990.

Leslie A. Cohen, David L. Neale, Levene & Eisenberg, Los Angeles, Cal., for trustee.

Philip A. Gasteier, Los Angeles, Cal., for Energrey Enterprises, Inc.

## OPINION

COYLE, Chief Judge.

On June 25, 1990, the court heard oral argument in connection with the appeal by Energrey Enterprises, Inc. of the Bankruptcy Court's findings of fact and conclusions of law filed on July 9, 1989. Upon due consideration of the written and oral arguments of the parties and the record herein, the court affirms the Bankruptcy Court.

In the Chapter 11 bankruptcy of Oak Creek Energy Farms, Ltd., an adversary proceeding was tried by the Bankruptcy Court wherein Energrey Enterprises, Inc. sued Oak Creek Energy Systems, Inc., Dean Beckett, Steve Cummings, and Oak Creek Energy Farms, Ltd. on the issue of whether or not there exists a Mechanic's Lien on the towers, motors, machinery, turbines and other related articles of the wind towers. The Bankruptcy Court ruled that

such a Mechanic's Lien did not exist and issued findings of fact and conclusions of law. 107 B.R. 266. Energrey's appeal followed.

## A. Failure to Perfect Appeal.

■ Oak Creek argues that Energrey failed to perfect its appeal in accordance with the Notice of Procedure to Be Followed in Appeal from Bankruptcy Court issued by the District Court on August 11, 1989.

In particular, Oak Creek argues that Energrey failed to file its Notice re Reporter's Transcript within ten days after receiving a copy of the Notice of Procedure, the Notice re Transcript not being filed until September 8, 1989. This delay caused a delay in the commencement of the briefing schedule and eventually in setting oral argument.

Energrey responds that it ordered a copy of the transcript immediately after filing the Notice of Appeal and the Designation of Record and Issues on Appeal. The Notice of Procedure was not received until after it had been determined that the appeal would be heard by the District Court and not the Bankruptcy Appellate Panel. Energrey asserts that it "diligently pursued the reporter regarding preparation of the transcript".

Because Oak Creek suggests no prejudice from this delay and it appears that the interim involvement of the BAP was in part responsible, the court disregards this arguement on appeal, especially since it appears that Oak Creek thinks that the transcript should have been filed with the District Court before the District Court issued the Notice of Procedure.

Oak Creek further argues that there is no evidence in the record indicating that Energrey filed the reporter's transcript with the District Court as required by Notice of Procedure. However, a copy of the transcript is attached as part of Energrey's Excerpts of Record.

■ Finally, Oak Creek asserts that the Notice of Procedure require Energrey to order and pay for the original and two copies of the transcript, that Oak Creek never received a copy and had to buy its own. Energrey not responding to this assertion, the court assumes it is true. However, rather than concluding that Energrey failed to perfect its appeal, the court orders that Energrey promptly reimburse Oak Creek for its expenditure.

## B. Issues on Appeal.

■ In Energrey's opening brief is listed in the Statement of Issues:

(g) To the extent that the judgment of the Bankruptcy Court was intended to exclude the possibility that Energrey retains a mechanics' lien against property in which the Debtor has an interest, and thus retains a secured claim, was such decision clearly erroneous?

Oak Creek asserts that this issue is not listed in the Statement of Issues on Appeal filed pursuant to Bankruptcy Rule 8006.

From the court's review of the record herein, Oak Creek is correct. The issue is not listed and is not inferrable from the issues listed. Consequently, this issue is waived and is not be considered by the court in this appeal. *In re Pine Mountain, Ltd,* 80 B.R. 171 (9th Cir.BAP 1987).

## C. Standard of Review.

The court applies the "clearly erroneous" standard to the Bankruptcy Court's findings of fact. Rule 8013, Bankruptcy Rules. Conclusions of law are subject to de novo review. *In re Mellor,* 734 F.2d 1396, 1399 (9th Cir.1984). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## D. Towers and Wind Turbines Not Subject to Mechanics' Lien.

### 1. Definitions and Standards Pertaining to Mechanics' Liens.

■ "Mechanics' liens are provided for in [the California Constitution] and by statute ... It is a right provided '... by the organic law, and shall not be lightly con-

sidered ..., the entire purpose of the laws providing for liens of mechanics or materialmen is to secure to them payment for the labor performed or material furnished.' ... 'The mechanics' lien law is remedial in character, and should be liberally construed in its entirety with a view to effect its objects and to promote justice.' ..." *Nolte v. Smith*, 189 Cal.App.2d 140, 144, 11 Cal.Rptr. 261 (1961). The statutes governing the existence and scope of mechanics' liens in California are set forth in the Civil Code. Civil Code § 3110 provides in pertinent part that "[m]echanics [etc.] ... performing labor upon or bestowing skill or other necessary services on, or furnishing materials ... to be used or consumed in ... a work of improvement shall have a lien upon the property upon which they have bestowed labor [,etc.]". The term "work of improvement" is defined in Civil Code § 3106:

'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings. Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvement as a whole.

Civil Code § 3128 provides:

The liens provided for in this chapter shall attach to the work of improvement and the land on which it is situated together with a convenient space about the same or so much as may be required for the convenient use and occupation thereof, if at the commencement of the work or of the furnishing of the materials for the same, the land belonged to the person who caused such work of improvement to be constructed, but if such person owned less than a fee simple estate in such land then only his interest therein is subject to such lien, except as provided in Section 3129.

"A mechanic's lien may be acquired for furnishing and installing fixtures. While permanency of improvement is ordinarily necessary for a mechanic's lien to attach, the mere fact that the materials are detachable or removable does not preclude a lien." 44 Cal.Jur.3d, *Mechanics' Liens*, § 37, p. 96. A fixture is defined in Civil Code § 660 as follows:

A thing is deemed to be affixed to land when it is ... permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; except that for the purposes of sale, ... things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sale of goods.

"Whether or not an article annexed to the real property is a fixture is a question of fact to be determined upon the evidence in the particular case ... The question is determined not only by the manner in which the article is annexed to the realty, but also by the relationship between the parties to the controversy." *R. Barcroft & Sons Co. v. Cullen*, 217 Cal. 708, 711, 20 P.2d 665 (1933) (citing *Gosliner v. Briones*, 187 Cal. 557, 559–60, 204 P. 19 (1921); *see also Abrenilla v. China Insurance Company, Ltd.*, 870 F.2d 548, 549 (9th Cir. 1989):

... California law is clear that whether a piece of property is a fixture is a question of fact ... Whether an article is a fixture depends upon the manner of its annexation, its adaptibility to the purpose for which the realty is used, and the intention of the party making the annexation.

Given these standards, the court has no trouble in ruling that Judge Ford's conclusions that the towers, motors, machinery, turbines and other related articles of the wind towers are not fixtures under the facts of this case while the foundations of the wind towers constructed by Energrey are fixtures are sustainable.

2. Improper Reference to California Law.

Energrey presents to some length in its brief arguments to the effect that the determination of whether or not the items at issue are fixtures must be made in the context of the mechanics' lien laws and suggests that the Bankruptcy Court did not do this. To the extent the court understands this argument, it not being very clearly presented, the court does not think it is correct. First of all, the court finds no indication in the Bankruptcy Court's ruling that it was disregarding the context or purpose of the mechanics' lien laws. Secondly, as noted above, this determination is factual and depends upon the specific circumstances of a relationship. Consequently, no case finding or not finding a fixture is controlling as a matter of law unless the circumstances are identical.

3. Work of Improvement.

Energrey further argues that the evidence presented at the trial clearly establishes that the towers and wind turbines are part of a work of improvement to which Energrey contributed, and that for purposes of the mechanics' lien law, they thus become a fixture to which Energrey's lien attaches. In so arguing, Energrey asserts:

The Oak Creek Wind Park is, and was designed to be, a power generating plant formed by a series of massive structures consisting of wind turbines and blades attached to towers which are in turn attached to specifically designed foundations and tied together with other turbines, transformers, and power stations through electrical lines entrenched within in the ground and passing through the foundations from the turbines to the power stations. It should be obvious that the foundations alone do not constitute the entire structure or scheme of improvement as a whole. Any work of improvement which includes foundations must, at a minimum, include at least the towers and turbines. Moreover, since the wind part as a whole is unitary scheme of improvement amounting to a generating plant, the entire park should reasonably be considered to constitute the work of improvement. The wind park constitutes improved real estate no less so than a group of buildings which make up a refinery or industrial plant.

Noting that Energrey cites no case authority for this proposition, Oak Creek responds that this lapse is because Energrey's theory has been rejected by the United States Supreme Court and other case law. In particular, Oak Creek refers the court to *South Fork Canal Co. v. Gordon*, 73 U.S. (6 Wall.) 561, 569–72, 18 L.Ed. 894, 896–97 (1868), wherein the United States Supreme Court held in construing a predecessor statute to Civil Code § 3110:

The two parts of the work—the one extending from the reservoir to the canon, and the other thence to the South Fork— were known respectively as the lower and the upper section. The two sections were constructed by different contractors and, as already shown, at different times. The former was completed and in use before the latter was begun. In these respects there were distinct works. The points of identity are continuity and a common object, use, and ownership.

The lien laws of California provide that all contractors, laborers and other persons 'furnishing materials for, or employed in, the construction of any bridge, ditch, flume, or aqueduct, shall have a lien upon the structure,' which they may have constructed or repaired, or for which they may have furnished materials of any description, 'to the extent of the labor done, and materials furnished, or both.' ...

. . . . .

We have already shown that the upper and lower sections were distinct works in several essential particulars, to which we need not again advert. The lower one having been finished and in use before the upper one was contracted for, if those having a lien upon the former had insisted that it became extended over the latter, as soon as the latter was completed, no legal mind, we apprehend, could

have doubted that the claim could not be sustained. If it could, Gordon's lien might have been rendered valueless. We think the converse of this proposition applies with equal force. If a lien upon the lower section could not have been extended over the upper one, upon what principle can it be maintained that Gordon's lien embraced the lower section? A lateral feeder constructed and intersecting the main line after it was completed, would certainly not have be subject to a previous lien upon the main line, if such a line existed. We can see no substantial difference between that case and the one before us. The upper section was only an additional feeder. That it was an elongation of the main line, and not a lateral work, does not affect the principle involved. The controlling circumstances and the object in both cases would be the same.

We think the language of the statute rightly interpreted is decisive.

The lien is given to contractors and laborers upon the ditch or flume 'which they may have constructed or repaired, ... to the extent of the labor done and materials furnished.' The work of Gordon was all done upon the upper section. He had nothing to do with the lower section. So far as he was concerned, and for all the purposes of this litigation, they were distinct and independent works. A different principle would produce confusion, and lead to serious evils.

Relying on this statement and the provision in Section 3110 that "[m]echanics.... contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances ... for the value of such labor done or materials furnished ...", Oak Creek argues that Energrey is entitled to assert a mechanics' lien against that aspect of the "work of improvement" actually contributed by Energrey. Oak Creek further notes:

Energrey places much reliance upon the language of Section 3106 ... that "'work of improvement' means the entire structure or scheme of improvement as a whole," ... in support of its argument that its lien, if considered valid, would attach to the wind turbines and related items as part of the Oak Creek "work of improvement." Section 3106, however, when read in conjunction with Section 3110 and considered together with *South Fork* ... indicates that, at most, Energrey would be entitled to assert a lien upon that portion of the overall work of improvement directly contributed by Energrey, to the extent of the value of the services, labor and/or materials contributed by Energrey in constructing *its* portion of the "work of improvement," *i.e.*, the foundations.

■ Energrey aptly characterizes Oak Creek's response as "nonsense". Section 3110 sets forth the persons who are entitled to mechanics' liens. Section 3128 sets forth the property that is subject to the mechanics' lien, i.e., "the work of improvement and the land on which it is situated...." And, as noted above, the "work of improvement" is defined in Section 3106 to mean the "entire structure or scheme of improvement as a whole". The overall thrust of these statutes is clear and the court does not think *South Fork* holds to the contrary. The court agrees with Energrey that the Supreme Court in *South Fork* was discussing two separate works of improvement.

The court's agreement with Energrey on this point does not, however, mean that the Bankruptcy Court's ruling is erroneous either in fact or in law. Energrey goes on to argue that the facts upon which it relies support a finding that the towers, turbines and other elements of the wind machines are fixtures for purposes of the mechanics' lien laws. In so arguing, Energrey refers the court to cases which have found the property at issue to be fixtures. *See e.g. R. Barcroft & Sons Co. v. Cullen*, 217 Cal. 708, 20 P.2d 665 (1933) (plaintiff installed piping, conduits and bolts for steel service and comfort stations which were then installed on a cement base and held in place by nuts screwed over the bolts). However, as noted above, the cases on which Energrey relies point out the factual nature of the determination of whether or not the

property at issue is or is not a fixture. In this regard, Oak Creek refers the court to cases which have not found the property at issue to be fixtures. *See e.g. Gosliner v. Briones*, 187 Cal. 557, 204 P. 19 (1921) (buildings constructed on mudsills placed upon the surface of the ground with the understanding that they could be removed).

4. Owners.

■ Energrey makes an argument concerning evidence of ownership of the wind towers that the court is finding particularly opaque. The Bankruptcy Court found in pertinent part: "Towers were owned by a mixture of people, partnerships, joint ventures, and corporations." Energrey argues:

This was really not a part of the evidence introduced at trial. More importantly, however, it was clear at trial that the issue was whether the towers, turbines and related property *owned by the Debtors* were subject to Energrey's mechanics' lien. The property of non-debtors was not in issue. Accordingly, to the extent the Court considered any inferences to be drawn from ownership by persons other than the Debtors, this was an improper basis for its decision.

Oak Creek responds that this argument has no merit and was not raised below:

The inferences made by the Bankruptcy Court were based upon evidence properly admitted at trial without objection by Energrey. For example, Energrey's Exhibit '14', ... clearly showed that not all turbines operated by Oak Creek are owned by the estate and that in some instances, the estate co-owns certain turbines with third party investors. Energrey cites no reason why the Court should not have considered such facts in making its decision as to the personal property nature of the turbines and towers. Moreover, the fact of ownership by third parties was discussed at length by both sides during oral argument.

In its reply brief, Energrey appears to really be contending that it just does not like the Bankruptcy Court's factual findings. Thus, asserting that "the Bankrupt-

cy Court gave far too much weight to evidence introduced by the Trustee, and barely considered the more relevant evidence submitted by Energrey", Energrey contends:

Thus, for example, the fact that some turbines located at the wind part (but not involved in this appeal or in the action before the Bankruptcy Court) were owned by nondebtors provides very little, if any, support for the Court's finding that the owners of the towers and related machinery involved in this action intended that such property be personal property not permanently attached to the real property.

The court does not agree. It seems to the court that this is relevant, especially given the argument made by Energrey that the entire wind park (and not just certain towers) were a work of improvement.

5. Movement.

Energrey further argues that the evidence presented to the Bankruptcy Court concerning the repair and relocation of the turbines was by the Trustee and was only within the wind park itself. Energrey contends that actions by the Trustee are not relevant to the intention of the Debtor at the time it installed the property at the wind park. However, Energrey did not object to the introduction of this evidence during the trial. Furthermore, as Oak Creek points out, Mr. Holman, Energrey's witness during the trial, testified that turbines were moved by third parties during the period 1980–1984. Consequently, the court does not find this argument by Energrey persuasive.

6. Unconsidered Evidence.

Energrey contends that the Bankruptcy Court failed to consider relevant and substantial evidence that the towers, turbines and related property were intended to be permanently affixed as improvements to the realty:

Evidence relevant to this issue, which the Bankruptcy Court did not consider, includes, without limitation,: (1) the sheer mass and weight of the property; (2) the

manner in which it was affixed to the land by means of specially constructed and configured bolts embedded in concrete foundations buried in the soil; (3) the manner in which the property was tied to the balance of the Wind Park through power lines running through the concrete and imbedded in the soil; (4) the fact that the foundations and towers and turbines are obviously a necessary and integral part of the same structure; (5) the purpose of the property to form part of the unit operating as a power generating Wind Park; (6) the fact that the Debtors actually used concrete mix to 'grout' the towers where they were connected to the foundations; (7) the fact that the Debtors never themselves moved, or removed this property; (8) the fact that the Debtors had begun the work necessary to enlarge the Wind Park; and (9) the overall scheme of improvement of the land which gave no reason to believe that these structures were intended to be temporary.

However, the court has reviewed Oak Creek's responses to these contentions and finds them persuasive.

### E. *Burden of Proof.*

█ In Bankruptcy Court's ruling, it is held in pertinent part as follows:

The second issue must be analyzed in two parts. The first part is whether or not the towers, the motor, the blades and related items are personal property or real property and how 'work of improvement' fits into this picture. By way of background, at some point in time DEAN BECKETT and STEVE CUMMINGS saw an opportunity to turn some barren hills located in the Tehachapi mountains into a wind park. They saw an opportunity to sell wind towers to various investors. The electricity could be sold, and the owners would receive an income and be allowed to take a large tax deduction. In order to complete the project, SYSTEMS hired ENERGREY to lay a cement foundation in the ground, after which the towers would be installed, the lines laid, and hopefully the wind would be converted into electricity to be sold to the power company. Towers were owned by a mixture of people, partnerships, joint ventures, and corporations. There is no evidence before this Court that these towers were intended to be works of improvement or fixtures permanently affixed and installed; no evidence they were to remain upon one cement block foundation, never to be repaired by being dissassembled, and were to be taxed as a part of the real property. In fact, to the contrary, the evidence indicates that the towers would, if necessary, be moved to a different location to gain a better advantage in the wind. It was certainly implied that the towers would be removed or dismantled for repair situations. The evidence indicates that the towers were taxed as personal property from the beginning. *ENERGREY failed to carry its burden of proof showing that these towers were to become 'fixtures' when they were bolted to the cement foundation. This requires a finding that they were not fixtures and that they were personal property.* It is equally clear that the cement foundations poured into the ground were fixtures attached to, and became a permanent part of, the real property.

Energrey argues that the above-quoted portion of the Bankruptcy Court's ruling establishes that the Bankruptcy Court improperly allocated the burden of proof:

This [emphasized] statement not only flies in the face of the weight of the evidence introduced at trial, it indicates that the Court failed to recognize the principle that the mechanics' lien law should be liberally construed in favor of its purpose to provide for the payment and lien rights of the mechanics' lienor. The statement of the Court indicates that the Court imposed the burden on Energrey to establish the matters as to which the Court states on the prior page of its opinion that there was no evidence. This was an improper allocation of the burden of proof. Energrey did not have the burden to show that the towers were intended to remain upon one cement block foundation, or were never to be

repaired, or to be taxed as real property. There was substantial evidence that the towers were intended to be works of improvement or fixtures permanently affixed and installed, which evidence the Court ignored. On the basis of this record as a whole, it is clear that the Bankruptcy Court improperly applied the mechanics' lien law to the facts presented at trial.

In the court's opinion, Energrey is improperly blending two different arguments. The question of which party has the burden to prove what is completely distinct from the question of whether that party has carried that burden of proof. Quite frankly, it appears to the court that Energrey is arguing the latter. Thus, Energrey is making the same arguments it makes in other sections of its appeal, i.e., that the findings of fact are clearly erroneous. To the extent that Energrey really means to argue that the Bankruptcy Court erred in indicating that it had the burden of proof on whether the items at issue were fixtures or the work of improvement, it must be noted that Energrey cites no case authority in support. From the court's research, it appears that Energrey's contention is wrong. Thus, in 44 Cal.Jur.3d, *Mechanics' Liens,* § 143 (In general; burden of proof), pp. 254–255, it is stated:

> The general rules of evidence are applicable to actions to foreclose mechanics' liens. Thus, the burden is on the plaintiff, in an action, to show facts entitling his to the lien. Since the right to enforce such a lien depends on compliance with the mechanics' lien law, the burden is on the claimant to show a valid and enforceable lien on the premises, meeting the requirements of that statute. It is the plaintiff's responsibility, for example, to plead and prove facts sufficient to show that his lien was filed within the time allowed by law. And a materialman must prove the value of the materials furnished and must also show just what material was affixed to the work of improvement.

While not exactly on point, the above-quoted general statement persuades the court that the Bankruptcy Court's statement is a correct statement of the law. Therefore, this argument on appeal is without merit.

## F. *Evidentiary Rulings.*

 Energrey further argues that the Bankruptcy Court improperly excluded testimony of Dwayne Holman. Holman was employed by Oak Creek from 1980 to 1984 as the project manager. During the course of Holman's testimony, the following evidentiary rulings were made by the Bankruptcy Court:

Q. And when you were at Oak Creek, as to the turbines that you built and installed on those premises, did you do that with the intention that the installation would be a permanent structure?

A. Yes, sir.

MR. COHEN: Objection, Your Honor, his intention is irrelevant to the contract before the Court.

THE COURT: Sustained, answer will be stricken.

MR. GASTEIER: Your Honor, this is not—so we understand the issue, this is not on the issue of the contract at all.

THE COURT: It's on the issue of whether or not it's a permanent improvement, what was the intent of the parties, right?

MR. GASTEIER: And is your Honor ruling that he's not going to be permitted to testify to that?

THE COURT: I don't think he's qualified. You haven't given me any information as to why he's qualified to speak for the Oak Creek owners and the people who entered into the contracts.

MR. GASTEIER: He has testified that he was the project manager in charge of installing these turbines for Oak Creek. This is the man that installed the turbines.

THE COURT: He's taking instructions from somebody else. He's not the one that's making the decisions as to whether or not these are going to be permanently installed or not or whatever. At least you haven't given me any credible evidence that he has any such authority. A manager is a person who's out giving

other employees instructions and following directions from management.

. . . . .

Q. Did—well, in the course of your duties as project manager for Oak Creek, did Mr. Beckett or Mr. Cummings ever indicate to you that they intended these turbines to be permanently in place where you were putting them?

MR. COHEN: Objection, your Honor, somebody else's indication of their intention to this witness has got to be completely irrelevant to this matter. If it was in terms of what their instructions were, then that might be a different issue. But I think anything he 'indicated' is not only speculative, but also calls for hearsay, or double hearsay, and it's also irrelevant.

THE COURT: It's hearsay, overruled. Sustained, excuse me, sustained.

MR. GASTEIER: I won't argue the point, your Honor. I do be—take exception, because I think it goes to—it's relative to their future intent, not—

THE COURT: You're asking this witness what the intent of the owners were. You can ask the witness what was said.

MR. GASTEIER: That's what I was asking him.

THE COURT: I mean instructions, not—you know, your question was, as I understand it, what was the intent of the owners. That's a conclusion that I'm going to arrive at, not his conclusion.

MR. GASTEIER: And I think what was said by the owners to the man in charge of constructing the turbines is a relevant indication of that.

THE COURT: I didn't hear that question. Why don't you ask your question again, and I'll listen to it again.

MR. GASTEIER: The question simply was, in the course of Mr. Holman's duties as project manager for Oak Creek—

BY MR. GASTEIER:

Q. Did Mr. Beckett or Mr. Cummings ever indicate to you that they intended these turbines to be permanently in place?

THE COURT: That's a conclusion. Objection sustained, you're not asking the proper question.

Energrey argues that both questions should have been permitted to be answered: "The testimony of the individual who was responsible for installing the property should be relevant and admissible in connection with the intention with which it was installed. Moreover, any statements by the owners and principle officers of the Debtors were not excludable as hearsay, since the Debtors were named parties to the proceedings."

■ However, Energrey's arguments really are nonresponsive to the reasons articulated by the Bankruptcy Court for its rulings. The court does not find the rulings to be erroneous. Moreover, as pointed out by Oak Creek, creditors are not bound by statements made by agents of the debtor and those statements are not considered to be admissions against interest. *Calhoun v. Baylor*, 646 F.2d 1158, 1162 (6th Cir.1981).

In its ruling, the Bankruptcy Court stated in pertinent part: "The evidence indicates that the towers were taxed as personal property from the beginning." Energrey argues that the Bankruptcy Court should not have considered the evidence of taxation in this form. The court does not agree. This is exactly what the evidence showed and exactly how the Bankruptcy Court stated it would consider the evidence when it was admitted.

### G. *Remand.*

With respect to the issue discussed which has been waived by the failure to assert it in the Statement of Issues on Appeal, Energrey argues that this court should order this matter remanded to the Bankruptcy Court for further proceedings on two issues even if the Bankruptcy Court is otherwise affirmed.

The first issue on which Energrey argues that remand is necessary is in order to determine the amount of interest and attorneys' fees. Apparently, however, this matter since has been resolved by stipulation of the parties.

The second issue on which Energrey seeks remand is whether Energrey has a valid mechanics' lien on foundations other than those covered by the foreclosure as well as determination of the value of those foundations. The court is not clear why these issues were not tried below or why they cannot be the subject of a separate proceeding or why a remand for this court is necessary.

In any event, Oak Creek refers the court to a statement made by Energrey during the trial: "[Energrey is] not secured by— we can't establish a secured claim in bankruptcy based on a lien on a non-debtor's property, so its not even before the Court, nor would I think it appropriate to bind somebody who's not a party to a proceeding." Oak Creek comments that it would be inappropriate under due process principles to remand any issue which could potentially impact upon the rights of unrepresented, non-party owners.

In its reply brief, Energrey asserts:

[R]emand is required *not* so that the Bankruptcy Court can determine Energrey's rights against third parties, but so that the Bankruptcy Court can determine any remaining issues regarding the validity of the lien, and the value of the estate's interest in the foundations located on the portions of the windpark which were not the subject of foreclosure. The Bankruptcy Court has already held [by implication] that Energrey's mechanics lien attached to such foundations.

However, none of this answers the question why this court should order a remand in connection with an issue that apparently was never raised or tried below.